Huling E. USSERY et al., Appellants,

v.

Dewey HOLLEBEKE et ux., Appellees.

No. 5705.

Court of Civil Appeals of Texas.

El Paso.

May 12, 1965.

Rehearing Denied June 9, 1965.

498

Finley & Scogin, Kermit, for appellants.

John F. Tomlin, Pecos, for appellees.

FRASER, Chief Justice.

On January 3, 1944 the appellants conveyed nine sections of mineral classified land in Culberson County to appellees. In addition to the usual clauses of such deeds, this particular deed contained the following clause, covenant or agreement:

> "It is understood and agreed by and between the grantors and the grantees herein that in the event said grantees or their heirs or assigns shall hereafter place any oil and gas or other mineral lease on said lands herein conveyed, or any part thereof, they will pay to said grantors, or their heirs or assigns one-half of all amounts that may be received by them from such source and to such extent this covenant shall run with said lands."

The vendor's lien was paid off and released on June 24, 1948.

Appellees executed an oil and gas lease and, in accordance with the agreement set forth above, forwarded one-half of the monies received to appellants. The first payment was made in April, 1949. Subsequently, two more oil and gas leases were executed with the same results, and this condition existed until July, 1959. In July of 1960 the appellees executed another oil and gas lease, but refused to pay any part of the monies received by them to the appellants, asserting that the above covenant was illegal and could not be enforced. Appellants filed this lawsuit in July, 1961, asking that the above set-forth agreement be enforced and appellees be required to pay appellants the sum of $12,768.50 as due in the covenant or as damages for breach of personal contract, or that the court cancel the aforementioned deed on the grounds that it was a mutual mistake between the parties. Appellants offered to adjust the so-called equities, if any, by paying a just and ascertainable sum of money back to appellees so as to restore the parties to their original position. The trial court entered a "take-nothing" judgment against appellants, and from such action appellants hereby appeal.

Appellants set forth in their brief that the facts have either been reduced to stipulation or are undisputed.

▇ It seems generally agreed that, under the Relinquishment Act, the owner of the surface of mineral classified lands becomes an agent of the State of Texas for the purpose of leasing such land for oil and gas. It has also been held that the surface owner of such property does not have the right to reserve or sell any of the minerals under the surface as, under such Act they belong to the State of Texas, with the surface owner acting as agent therefor. We think it has been clearly established that the provisions of the Relinquishment Act are now clear and in effect. Some cases have pointed out that the reason for such Act is that a contrary situation violates the legislative intent or policy, so as to make a future lease of such lands less attractive. Appellants maintain there is a distinction between the situation where a reservation is attempted, rather than an outright conveyance by the surface owner of some part of the minerals to another. It is our opinion and holding that both such situations come under the terms and provisions of the Relinquishment Act and the cases dealing with or construing said Act.

In their first four points, appellants maintain that the court erred in holding that the provision above set forth was invalid and that such was a material part of the deed, and the court erred in not, therefore, holding the entire deed invalid. We do not believe that appellants have produced sufficient evidence to indicate that the deed itself, with the exception of the covenant, was against either the public policy or the Relinquishment Act of the State, nor have they been able to prove the particular covenant legal and enforcible. State v. Magnolia Petroleum Co., Tex.Civ. App., 173 S.W.2d 186 (err. ref., w. m.); Lewis v. Oates, 145 Tex. 77, 195 S.W.2d 123. We do not believe that the illegality or invalidity of the provision or covenant above set forth requires the court to set aside the entire deed and transfer of property. If the covenant were legal, there is no allegation of bad faith on the part of anyone in this matter, nor any allegation of fraud; and in the absence of these elements, we do not believe cancellation and/or rescission of the executed conveyance should be granted for failure of the grantees to perform some act in the future, even assuming such acts to be legal. We believe, and so hold, that the provision in question here was a mere covenant or promise that was illegal from its inception, but does not, as such, vitiate the entire deed. It is apparent from the record that both parties knew about the Relinquishment Act and willingly agreed to this particular provision or covenant. The subsequent discovery that this one provision of the deed was illegal would not, in our opinion, constitute grounds to cause the entire deal, or deed, to be declared invalid and entitled to cancellation. It was not the main or entire consideration of the deed, and the record reflects—and it is so stated in appellants' brief—that this was the usual form of deed used in conveying real property. Therefore, the only taint was the attempt on the part of the grantors to reserve something which they had no right to reserve. With reference to the first four points of appellants, we therefore hold that this provision was contrary to the Relinquishment Act of the State of Texas, against the public policy of the State, and therefore invalid. Further, that the invalidity of this one provision does not destroy the main transaction, which was the conveyance of the surface of the nine sections of ranch land. Appellants' first four points are therefore overruled.

Appellants' Points 5, 6, and 7 allege error in that the trial court should have allowed them the sum of $12,768.50. This sum represents mineral revenue from the lands herein concerned, and we have already held that the provision under which this money was requested by appellants is invalid, and appellees are therefore not obliged to share their mineral revenues from these nine sections of land. We cannot agree with appellants that the provision with which we are dealing was a personal contract between the parties and, as such, enforcible. To so hold would permit evasion of the provisions of the Relinquishment Act and, secondly, this provision is contained within the deed or conveyance, and there is no evidence that it is any separate personal contract. The amount set forth above represents mineral revenue accruing after 1959 and as a result of new oil and gas leases. The sum demanded by appellants is one-half of the amount received by appellees. Because this provision is, in our opinion, illegal, there can be no enforcible demand emanating therefrom for either its payment or specific performance. Pomeroy on Equity, page 940; Blaine v. Blaine, Tex.Civ.App., 207 S.W.2d 989; Morgan Ice Co. v. Barfield, Tex.Civ.App., 190 S.W.2d 847. The court stated in the Blaine case, supra: " 'As between the parties to such a contract, who are in equal fault, no right exists which a court of justice will enforce.' " The record in the case before us does not, in our opinion, reflect any mistake in fact—only a mutual misunderstanding or mistake of the law. These points are therefore overruled.

Appellants' Points 8 through 14 claim that the trial court committed error in refusing to order rescission or cancellation of the deed. In discussing these points it must be borne in mind that the parties knew about the Relinquishment Act, and that this was mineral classified land; also, that the trial court found that the attorney who drew up the deed in question advised both parties that he knew of no way that the vendors could reserve a half interest in the minerals. In addition, the appellant who was making the deal testified that he was not misled and that there was no fraud involved; that it was merely a mistake. It has been held that in an executed conveyance such as we have here, the remedy for mere breach of covenant, unaccompanied by equitable grounds for rescission, is one at law for damages, rather than equitable rescission. Other cases have held, as we have pointed out earlier, that rescission and cancellation will not be decreed because of the failure of the grantee to perform some act in the future. Also, that a mutual mistake of law is not grounds for rescission or cancellation of a deed or contract. The record here, including the exhibits, shows that there was no withholding of material facts by either party, and no fraud; nor is there any evidence of planned breach or fraud in the future. On the contrary, appellants received considerable money under this provision until such was stopped in 1959. The correspondence between the appellant who was making the deal and the attorney exhibits complete faith and confidence in the attorney's ability and integrity in representing both parties. Therefore, we must hold that there was no mutual mistake of fact, or any mistake of fact, nor was there any evidence of present or planned fraudulent behavior on the part of either of the contracting parties. One Federal court, in the case of Boren v. Burgess, D.C., 97 F.Supp. 1019, goes so far as to say:

"A mutual mistake of law is not grounds for rescission or cancellation of a deed or contract. The probate attorney stated that an owner of an interest in the 140 acre tract in Section 26 was entitled to participate in the royalty from the producing tract in the proportion his interest bore to the whole 180 acre tract. As will be discussed below, this is an erroneous legal conclusion. The facts, however, upon which he based his remarks are a matter of record and the purchaser of land at a judicial sale is bound by the record under which he purchases; as a result, plaintiff cannot predicate an action for rescission of the deed on the misrepresentation as to the applicable law by the probate attorney."

The similarity of that case and this case is readily apparent, because here the attorney for the parties advised both parties of the restrictions of the Relinquishment Act, but suggested that the covenant with which we are here concerned might be the legal answer to the parties' problem. Chicago, T. & M. C. Ry. Co. v. Titterington, 82 Tex. 218, 19 S.W. 472; Hearne v. Bradshaw, 158 Tex. 453, 312 S.W.2d 948; Hill et al. v. Provine et al., Tex.Civ.App., 260 S.W. 681; Clampitt v. Ponder, D.C., 91 F.Supp. 553. Again it will be noticed, in the Federal cases cited above, that it is held that mere mistake of a party as to the legal effect of an instrument does not vitiate the instrument or afford ground for reformation. Crews et al. v. Crews, 212 Ark. 734, 207 S.W.2d 606. Appellants' Points 8 through 14 are therefore overruled.

Appellants' Points 15 through 23, and 27 through 29, allege error in that the trial court was not justified in holding that there was no mutual mistake, and that if there was, it was one of law instead of fact. We shall try to deal with these points as a group. First of all, it is stated in the appellants' brief that the acts of the appellants, for all practicable purposes, are those of Huling E. Ussery, Sr., even though the parties are referred to as "appellants" herein. Therefore it is important to note that in the record, there is a letter from Mr. Huling Ussery, dated April 11, 1943, in

which he states that he is aware that the property involved is mineral classified, and such letter indicates his own familiarity with the legal status of the property. There is also a letter from Ussery to the appellees in which letter he states that he felt that Judge Drane, attorney for the appellees, could draw up an agreement that would not only be satisfactory, but, as he said, would be much better than one he could have drawn up at his place of residence, which was at that time in Reno, Nevada. These exhibits and the record itself show that there was no concealment of any vital fact by either party and no mutual mistake of fact, the mistake being one of law based on the advice of an attorney who was satisfactory to both parties. The appellants themselves agree that Judge Drane, the original attorney for appellees, acted in utmost good faith and was a gentleman of complete integrity. So we have before us a controversy wherein the appellants were fully informed of the necessary facts pertaining to their negotiations and agreement, but were mistaken as to the legal meaning and effect thereof. It has been held that a mistake of law, not induced by fraud or misconduct of the other party, cannot be the ground for equitable relief. Nor do we have here the presence in this record of any evidence that one party had superior knowledge as to the law. The record shows that there was no mistake in the language of the provision in the deed; that Ussery himself testified that this provision was inserted in order to secure to him and his heirs and assigns one-half of any future mineral revenue that might be paid to grantees. The mistake here is that all parties thought this was a legal provision, and they erroneously concluded that the provision was legal and would accomplish the purpose that Mr. Ussery testified to. We have already discussed the fact that such provision is illegal and against the public policy of the State; so here, to repeat, it was a mutual misunderstanding of the law and the legal effects of the provision concerned. Pollard v. Steffens (S. Ct.), 161 Tex. 594, 343 S.W.2d 234; Boren v. Burgess (supra); Clampitt v. Ponder (supra). These points are accordingly overruled.

Appellees maintain, in their fifth point, that the trial court did not err in refusing to hold that the appellees were estopped to deny the validity and enforcibility of the attempted reservation of minerals in the deed. Estoppel cannot be predicated upon performance or non-performance of an illegal covenant. To hold otherwise would be to say that an illegal covenant—and here, one that is against public policy—could be legalized by estopping one party from declaring and resting upon its illegality. Lewis v. Oates (supra); 22 Tex.Jur.2d 679, Estoppel, § 14.

Appellants claim in Points 24, 25 and 26 that appellees led appellants into believing that appellees could carry out the provision of the covenant. In our opinion the record does not sustain this assertion, as evidenced by the testimony and correspondence in the record.

In a very early case, the Fourth Court of Civil Appeals certified to the Texas Supreme Court the question of whether it was contrary to public policy in Texas for a public officer to give a lien upon his unearned official compensation. This opinion by the Supreme Court is dated December 21, 1893, in the case of State National Bank of El Paso v. Fink, 86 Tex. 303, 24 S.W. 256. In 1894 the Court of Civil Appeals held that, inasmuch as the Supreme Court had certified the assignment of salary by a public officer to be against public policy, such contract, being void because it was against public policy, was not capable of being made good by ratification so long as the grounds on which the inhibition rests existed. State National Bank v. Fink, 24 S.W. 937. Points 24, 25 and 26 are accordingly overruled.

In Point 30, appellants complain of the action of the trial court in refusing to permit rescission and cancellation of the deed upon payment or tender of the consid-

eration originally paid. Although we have discussed this matter, we think it should be again mentioned that the record shows, through the testimony of Mr. Ussery himself, that the attorney, Judge Drane, had written him saying he knew of no way he could reserve a mineral interest; further, that Judge Drane then suggested the covenant in question. Ussery and his wife signed the deed, and he himself testified that he knew the facts concerning the mineral classification of the land and the agency plan provided in the Relinquishment Act, and that he knew what he wanted to accomplish by the aforesaid reservation. Mr. Ussery also testified that the appellees did not practice any fraud on him and that appellees had no knowledge superior to his of the mineral classification and rights of surface owners in mineral classified lands. There is no provision in the deed for forfeiture or re-entry for breach of covenant. The deed was fully executed and the vendor's lien paid off. It is obvious that the covenant here could not be treated as a condition subsequent, because the necessary language is lacking. This covenant appears to be one, if enforcible, that would give appellants only an action for damages, rather than cancellation or rescission. Chicago, T. & M. C. Ry. Co. v. Titterington (supra); Rosek v. Kotzur et ux., Tex.Civ. App., 267 S.W. 759. It is stated, in 13 Tex. Jur.2d 414, § 202, that parties to an illegal contract cannot recover from each other anything that was done or promised in carrying out the agreement, nor can the illegal contract be ratified or enforcement compelled. Appellants' Point 30 is therefore overruled.

Appellants' Points 31 through 36 allege that the trial court committed error in holding that their action to cancel the deed was barred by the four-year statute of limitations. The deed was dated January 3, 1944 and the first payment received by appellees from mineral leasing of the land was April 11, 1949, which was approximately five years and three months after the date of the deed. We do not believe that the trial court committed error in his holding, nor do we believe that the appellees deprived themselves of the defense of limitation by partial performance in that they did pay some sums of money to appellants. There is nothing in the record to suggest that appellees did anything to mislead the appellants or lull them into a sense of security. We do not believe that partial performance, to-wit, the payment of monies, was anything more than a mistake on the part of both parties. In any event, no monies were paid by appellees until more than four years had elapsed since execution of the deed (in reality, about five years and three months). It has been held that ignorance of the law is no excuse, so it is difficult to say how appellants could have been harmed. In any event, misrepresentation as to a matter of *law* is generally considered merely an expression of opinion and will not ordinarily support an action of fraud and deceit. This deed having been in existence more than four years after its execution, we think, precludes cancellation under the conditions here present, and the record does not divulge any facts or information that prevent the appellees from asserting their defense of limitation. It has been said that the grantor is charged, as a matter of law, with knowledge of the contents of his deed from the date of its execution, and limitation begins to run against his action to correct it from that date. Dean et al. v. A. G. McAdams Lumber Co., Tex.Civ.App., 172 S.W. 762; Kahanek v. Kahanek, Tex.Civ.App., 192 S.W.2d 174. Points 31 through 36 are accordingly overruled.

Points 37, 38 and 39 again deal with the matter of estoppel and charge the trial court with error in holding that no estoppel arose because appellants had partially performed some of the provisions of the illegal covenant. We think this matter has been covered, and these points are therefore overruled.

In summation, it is our holding that the attempted reservation by appellants was void and unenforcible, and therefore any

recovery under such covenant would also be void and unenforcible; that appellants' plea for cancellation of the deed cannot be granted because we have here only a breach of covenant, as set forth above, and not a condition subsequent; that the mistake or misunderstanding, if any there be, between the parties was one of law and not of fact, and no one was deceived, defrauded or in possession of knowledge superior to the other party; and lastly, appellants' effort to cancel the deed is effectively barred by the statute of limitations.

All of appellants' points of error are therefore overruled, and the decision of the trial court is affirmed.