Jack MONTGOMERY and Mike
Montgomery, Appellants,

v.

Josephine BROWDER, et al., Appellees.

No. 07–96–0104–CV.

Court of Appeals of Texas,
Amarillo.

Aug. 26, 1996.

Opinion Overruling Rehearing
Oct. 7, 1996.

Rehearing Overruled Oct. 30, 1996.

Hinkle, Cox, Eaton, Coffield & Hensley, John C. Chambers, Amarillo, for Appellants.

Jerry D. Courtney, William J. Lowe, Clarendon, for Appellees.

Before BOYD and QUINN, JJ., and REYNOLDS, Senior Justice.*

BOYD, Justice.

In this appeal, appellants Jack and Mike Montgomery seek reversal of a summary judgment in favor of appellees Josephine Browder; Josephine Bruyere; Elizabeth Rolfes; Patty Nell Carver, Independent Executrix of the Estate of Frances Appleby; and Geraldine Tennant, individually and as Independent Executrix of the Estate of Maude Browder (the Browder Group). Appellants advance six reasons why the trial court erred in granting appellees' motion for summary judgment and denying appellants' motion for summary judgment. We affirm the judgment of the trial court.

Appellants entered into a contract to purchase land from Frances Browder Mullan (Mullan), a life tenant of certain land located in Donley County. The Browder Group are remaindermen claiming an interest in the land. A somewhat detailed recitation of the facts is necessary for a proper discussion of this appeal.

In September 1984, Bess E. Browder (Bess) made and published her last will. Her death soon followed and the will was admitted to probate in Potter County. As pertinent to this appeal, the will provided:

> All of the rest, residue and remainder of my estate, real and personal and wheresoever situated, I give to my beloved sister FRANCES BROWDER MULLAN, for her natural life with remainder over at her decease as is hereinafter set forthe [sic] in Paragraph V, provided that if needed by the said Frances Browder Mullan during her lifetime she may appriate [sic] from the corpus of my estate such sums as shall be necessary supplementary to all other sources of income for her proper maintenance and support in accordance with her present station in life.

> In the handling, managing, control and disposition of the property of my estate I give to the said Frances Browder Mullan during her lifetime every power and authority which she would have if she were the free [sic] simple owner thereof, but the remainder of the property of my estate in its original or converted form, by sale or otherwise, at my said sister's decease to pass to the remaindermen as hereinafter stipulated. All of the monies received from oil, gas and other mineral royalties, bonuses, delay rentals and from the production of oil, gas and other minerals shall be considered income of the life tenant.

> Upon the death of my sister, or upon my death should my sister predecease me, the then remainder of all of my property real and personal and wherever situated, shall pass to the following persons whose names are as follows: Josephine Bruyere, Maude E. Browder, Betty Rolfes, Frances Appleby, Geraldine Tennant, and Josephine Chamberlain Browder, share and share alike. Should any of the above predecease me, then the share of my estate which

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1996).

would have gone to said deceased had she survived me shall revert back to the estate to be shared by the remaining heirs.

Mullan was also named as Independent Executrix of Bess's estate, and all remaindermen survived Bess.

On or about October 20, 1986, Mullan entered into a "Contract of Purchase and Sale of Real Property" with appellants covering the Donley County property. The pertinent portions of the contract are:

1. Sellers owns [sic] and holds record legal title in and to that real property described as: (property description).

Seller contracts and agrees to sell and convey said land to Buyers and Buyers contract and agree to purchase and take title thereto all for the total consideration of Fifty Five Thousand and no/100—($55,000.00)—Dollars, paid and to be paid as follows:

Twenty Five Thousand and no/100—($25,000)—Dollars cash to be paid in hand to Seller by Buyers at the closing of this transaction, and—

The execution and delivery of their one certain promissory note by Buyers payable to the order of Seller bearing date of the closing date of this contract in the original principal amount of Thirty Thousand and no/100 bearing interest from date thereof on the unpaid principal balance at the rate of 8% per annum. The principal of said note shall be payable as the operation of the property will afford after payment of the annual expenses thereof, but in any event the unpaid principal shall be paid in full on or before fifteen years after the date of the said note.

\*　　\*　　\*　　\*　　\*　　\*

2. Buyers shall execute and deliver a Deed of Trust granting the deed of trust lien against said land to secure the prompt payment of said promissory note.

3. Seller, as a part of the consideration herein, contracts and agrees to forgive the unpaid balance of principal and interest on her promissory note above described remaining on the date of her death, and to make this agreement legally effective, Seller Covenants [sic] that she will make and execute a will, or codicil to a Last Will and Testament meeting the requirements of the statute of wills of this state forgiving the unpaid balance of principal and interest, if any, remaining due and owing on said note on the date of her death.

On November 26, 1986, the deal was closed. Appellants paid the cash consideration of $25,000 and the $30,000 "Deed of Trust Promissory Note" was executed and delivered. Mullan also executed a "Warranty Deed with Vendor's Lien," individually and as independent executrix of Bess's estate.

Also included in the summary judgment evidence is a document bearing Mullan's signature and entitled "Codicil to my Last Will and Testament." This document did not qualify for probate under Arizona law, apparently the state of Mullan's residence. This document reads as follows:

I, as Seller of real property described as: (property described).

as part of the consideration of the sale to Jack and Mike Montgomery of Hall County, Texas, (called "Buyers" in the Contract of Purchase and Sale of above land), contract and agree to forgive the unpaid balance of principal and interest on the promissary [sic] note I hold describing the above property, remaining at the time of my death.

I have made this codicil to my Last Will and Testament, as I promised I would do in the Contract of Purchase and Sale of this Real Property.

This document shows to have been signed by Frances R. Mullan on October 9, 1985.

Appellants made interest payments on November 25, 1987 and 1988 but, when attempting to make a November 1989 payment, learned that Mullan died on August 14, 1989. Mullan's will was admitted to probate in Maricopa County, Arizona. Included in the will was a provision in which she attempted to dispose of all property owned by her at her death, "including property inherited from my sister Bess E. Browder...."

In their suit giving rise to the summary judgment and this appeal, the Browder Group sought judgment that the note was

their property as remaindermen, for recovery of the unpaid principal and interest on the note, and for foreclosure of the liens securing the note, attorney fees, and accrued rental value. In their motion for summary judgment, the Browder Group alleged that after Mullan's death, appellants did not pay installments of interest on the note executed by them and were, therefore, in default under the note. In support of that position, they contended that Bess's will did not give Mullan, as a life tenant, "unlimited power to dispose of the property in question nor the power to appoint the property to herself to dispose of by will." As a result, they concluded, the note and the liens securing its payments were the property of Bess's estate in its "converted form" and passed to the Browder Group upon the death of the life tenant.

Summarized, in their cross-motion seeking summary judgment and in their response, appellants argued that Mullan had the power to enter into the sale contract, and that her agreement to execute a will or codicil forgiving the balance then due on the purchase money note upon her death was valid, was part of the consideration for the sale, and was made with the intent that appellants would rely upon that agreement. They further alleged that by failing to make an effective testamentary release of the note balance, Mullan breached her contract resulting in damages to appellants "equal to the full amount of the damages plus attorney's fees" and that the Browder Group was liable to appellants for those damages and attorney fees "to the extent of the inheritance from Mullan." They also asserted they had established title by limitations by virtue of section 16.024 of the Texas Civil Practice and Remedies Code.

The standards for appellate review of a summary judgment are now axiomatic. As explicated by our Supreme Court, they are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary

judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ It is also established that when both parties move for summary judgment and the trial court grants one of the motions and denies the other, an appellate court should consider all issues presented and may reverse the judgment of the trial court and render such judgment as the trial court should have rendered, which could include rendering judgment for the other movant. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex. 1988); *Fort Bend Central Appraisal Dist. v. Hines Wholesale Nurseries,* 844 S.W.2d 857, 859 (Tex.App.—Texarkana 1992, writ denied).

■ To obtain summary judgment in its favor, a plaintiff must conclusively prove its entitlement to prevail on each element of its cause of action as a matter of law. *Thompson v. Chrysler First Business Credit Corp.,* 840 S.W.2d 25, 28 (Tex.App.—Dallas 1992, no writ). In order for a defendant to be entitled to summary judgment, it must disprove, as a matter of law, at least one of the essential elements of each of the plaintiff's causes of action, *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991), or must establish one or more defenses as a matter of law. *Bryant v. Gulf Oil Corp.,* 694 S.W.2d 443, 445 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.).

■ In discussing the questions presented by this appeal, we must bear in mind that the cardinal rule in interpreting a will is to determine the intention of the testator, as revealed by words used in the will, and to enforce that intention as stated if it is legally permissible to do so. *Larson v. Enserch Exploration, Inc.,* 644 S.W.2d 61, 63 (Tex. App.—Amarillo 1982, writ ref'd n.r.e.). In *Edds v. Mitchell,* 143 Tex. 307, 184 S.W.2d 823, 825 (1945), the court held that even when a life tenant is given a full power of disposition, the life estate is not thereby converted into a fee simple title inasmuch as the power of disposition is derived from the will

itself, and does not spring from the devise. In explicating this holding, the court said:

> [W]hen a life estate is expressly created by will and unlimited power of disposition given to the life tenant, with remainder over in whatever part of the estate remains undisposed of at the time of the death of the life tenant, the proceeds of sales made by the life tenant, undisposed of at the time of his death, as well as the unsold part of the very property devised, pass to the remainderman, provided of course, the language of the will does not disclose an intention that the proceeds of sales shall not so pass.

*Id.*

 When a life tenant chooses to sell the property in which the tenant has a life estate with a power of disposition, it naturally follows that the remainder estate is decreased, because the sale defeats any remainder interest in the property. *Hext v. Price,* 847 S.W.2d 408, 414 (Tex.App.—Amarillo 1993, no writ). In *Dickerson v. Keller,* 521 S.W.2d 288 (Tex.Civ.App.—Texarkana 1975, writ ref'd n.r.e.), the court noted that in almost every instance, when called upon to determine the extent of powers of disposition in cases similar to this one, Texas courts have held the power to be "absolute and unlimited" [1] when words such as "with full power to dispose of" or "absolutely to dispose of ... according to her pleasure" or "as such survivor may desire" or the like are used to create or describe the power. *Id.* at 291 (citations omitted); *See also Moore v. Gorden,* 221 S.W.2d 314, 316 (Tex.Civ.App.—Waco 1949, writ ref'd n.r.e.). In the event of an unlimited and absolute power to convey, the *Dickerson* court noted the explanation in *Harrell v. Hickman,* 147 Tex. 396, 215 S.W.2d 876, 879 (1948), in which the court instructed the existence of such a power "limited the rights of the remaindermen to whatever estate remained in the survivor at his or her death."

 As we have noted, in Bess's will, after setting out the life estate she devises to Mullan, she states, "provided that if needed by [Mullan] during her lifetime she may appriate [sic] from the corpus of my estate such sums as shall be necessary...." In the succeeding paragraph, in order to effectuate this right of invasion of the corpus, Bess states that "[i]n the handling, managing, control and disposition of the property of my estate I give to [Mullan] during her lifetime every power and authority which she would have if she were the free [sic] simple owner thereof." Thus, although the power granted to Mullan was broad, because Mullan's power to invade the corpus was limited by her perceived "need" to use the corpus invaded for her benefit, it was not an absolute and untrammeled right of disposition.

 The Browder Group, as remaindermen in the estate, had a vested interest in the Donley County property which could only be destroyed by Mullan's exercise of her power of sale and the use of the proceeds for her own support. *Medlin v. Medlin,* 203 S.W.2d 635 (Tex.Civ.App.—Amarillo 1947, writ ref'd). Mullan was the sole judge of the necessity or advisability of such a sale to the extent that her judgment was not subject to review by the courts, unless she exceeded her authority, failed to act in good faith, or merely sought to defeat the rights of the remaindermen. *See Guest v. Bizzell,* 271 S.W.2d 472, 476 (Tex.Civ.App.—Eastland 1954, writ ref'd), *citing* 33 Am.Jur. 731 and 69 C.J. 838. As a result, we must now focus upon Mullan's attempt to dispose of the proceeds of the property upon her death.

 Reiterated, giving a life tenant extensive powers of disposition does not convert the life estate into a fee simple title. *Edds,* 184 S.W.2d at 825. During her lifetime, Mullan had the authority to dispose of the Donley County property by selling it to appellants to meet her "need"; however, because a life estate terminates upon the death of the life tenant, she could not have disposed of it by will. *Murphy v. Slaton,* 154 Tex. 35, 273 S.W.2d 588, 595–96 (1955); *Bridges v. First Nat'l Bank in Dallas,* 430 S.W.2d 376, 382 (Tex.Civ.App.—Dallas 1968, writ ref'd

---

1. However, even such powers do not empower a life tenant to make a testamentary disposition of property in which the life tenancy is held. *Murphy v. Slaton,* 154 Tex. 35, 273 S.W.2d 588, 595–96 (1955).

n.r.e.). Such a rule of law or statute cannot be changed by contractual agreement between parties. *McFarland v. Haby*, 589 S.W.2d 521, 524 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.), *citing Williams v. Williams*, 569 S.W.2d 867 (Tex.1978).

A life tenant cannot alienate any greater interest in property than an interest that ceases with her life, even if the tenant expressly seeks to do so. *First Nat'l Bank of Amarillo v. Amarillo Nat'l Bank*, 531 S.W.2d 905, 907 (Tex.Civ.App.—Amarillo 1975, no writ). Reiterated, by its express terms, Bess's will provided that the remainder of the property of her estate "in its original or converted form, by sale or otherwise, at my said sister's decease to pass to the remaindermen as hereinafter stipulated." Mullan's attempt to make a testamentary gift of the note balance was in excess of the authority granted her under the will and was repugnant to well established property law in this state. *See Maxwell v. Harrell*, 183 S.W.2d 577, 579 (Tex.Civ.App.—Austin 1944, no writ). Having made that decision, it becomes necessary to decide whether members of the Browder Group are liable for damages suffered by appellants as a result of Mullan's breach of contract.

It is well settled that a contract which violates public policy is void. A contract against public policy can be defined as a provision or stipulation that is illegal or inconsistent with or contrary to the public's best interest. *Locomotive Eng. & Cond. Mut. Prot. Ass'n v. Bush*, 576 S.W.2d 887, 890 (Tex.Civ.App.—Tyler 1979, no writ). Expressions of public policy are found in the constitution and statutes, as well as the common law. *Id.* The common law dictates that Mullan could not dispose of, as against the remaindermen, any greater estate than she as a life tenant had received under the will. *Brown v. Wood*, 239 S.W.2d 195, 200 (Tex. Civ.App.—Dallas 1951, writ ref'd). Because the interests of Mullan and the remaindermen were separate, conflicting, and antagonistic to each other, she could not have represented them. Thus, as the remaindermen were not parties to the sale contract, any portion of the contract which conflicted with

their rights could not be valid or binding upon them and was void as to them. *Id.*

The general rule in Texas is that one who buys property must, at his peril, ascertain the ownership of the property. *Kimbell Milling Co. v. Greene*, 162 S.W.2d 991, 996 (Tex.Civ.App.—Fort Worth 1942), *aff'd*, 141 Tex. 84, 170 S.W.2d 191 (1943). The mere fact that Mullan may have been in possession of the property did not warrant an assumption that she had the right to make a testamentary gift of the note as transmutation of the property. Bess's will showing the extent of Mullan's status as a life tenant was a matter of record, and appellants were charged with notice of that status and the legal implications arising therefrom.

As a general rule, the courts will not enforce an illegal contract. *Plumlee v. Paddock*, 832 S.W.2d 757, 759 (Tex.App.—Fort Worth 1992, writ denied), *citing Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146, 148–49 (1947). The rationale behind this rule is not to protect or punish either party to the contract, but to benefit and protect the public. *Id.* Because of the presumption in this state that the contracting parties are cognizant of the law and contract accordingly, the courts will generally leave the parties as they find them. *Plumlee*, 832 S.W.2d at 759. Courts are no more likely to help a party attempting to enforce an illegal contract than they are disposed in favor of the party who uses the illegality to avoid liability. *Id., citing Loggins v. Stewart*, 218 S.W.2d 1011, 1015 (Tex. Civ.App.—El Paso 1949, writ ref'd).

Where part of the consideration is illegal because it violates the law, the entire agreement is void if the contract is entire and indivisible. *David Gavin Co. v. Gibson*, 780 S.W.2d 833, 835 (Tex.App.—Houston [14th Dist.] 1989, writ denied). The doctrine of severability is applied in circumstances where the original consideration for the contract is legal, but incidental promises within the contract are found to be illegal. *Rogers v. Wolfson*, 763 S.W.2d 922, 925 (Tex. App.—Dallas 1989, writ denied). Severability of the contract is determined by the intent of the parties as evidenced by the language

of the contract. *McFarland,* 589 S.W.2d at 524.

■ The express terms of the contract provide that forgiveness of the unpaid balance of the promissory note was "part of the consideration herein." Other provisions describing the payment of the consideration include the provision that the principal of the note "shall be payable as the operation of the property will afford ... but in any event the unpaid principal shall be paid before fifteen years after the date of the said note." In other words, the only payment the buyers had to make on a yearly basis was the interest payment. If that portion of the agreement had been valid, Mullan's death before the expiration of 15 years could have resulted in forgiveness of the principal amount as well as any accrued interest. In addition, each appellant avers in his respective affidavit that forgiveness of the debt was an important part of the agreement. *Inter alia,* Jack avers that "I would not have agreed to purchase the property for the consideration expressed in the contract had the forgiveness of the purchase money debt on Mrs. Mullan's death not been included."

■ Assuming, arguendo, that the affidavits of these interested parties, together with the contract recitations, were sufficient to establish the importance of the forgiveness of the debt to the contract, they emphasize the intent of all parties to the contract that Mullan make a testamentary disposition of the note proceeds with the corresponding diminution of the rights of the remaindermen. The forgiveness provision is inseparable from the rest of the contract; thus, we apply the rule that if the consideration or any part of it be unlawful, the *contract* is void and unenforceable. *Id., citing Patrizi v. McAninch,* 153 Tex. 389, 269 S.W.2d 343 (1954); *Edwards County v. Jennings,* 89 Tex. 618, 35 S.W. 1053 (1896). We must, therefore, apply the corollary rule that in such instances the courts will neither protect nor punish either party to the contract, but to benefit the public will leave the parties as the court finds them. *Plumlee,* 832 S.W.2d at 759.

Under this record, this court finds a facially valid warranty deed from Mullan to appellants conveying the Donley County property, in which a vendor's lien and a deed of trust lien are retained to secure the purchase money note in the principal amount of $30,000, with principal and interest payable as we have described. No mention of any forgiveness agreement is made in either the deed, the vendor's lien notes, or in the deed of trust. The Browder Group does not challenge the validity of the conveyance itself nor do they seek to recover title to the property. Appellants do not challenge the validity of the notes other than seeking to escape liability by virtue of the agreement, or in the alternative, damages equivalent to the amounts due under the notes.

Parenthetically, even if we were to find the illegal promise to forgive was severable from the remainder of the contract, by applying the persuasive teachings of *Ussery v. Hollebeke,* 391 S.W.2d 497 (Tex.Civ.App.—El Paso 1965, writ ref'd n.r.e.), we would come to the same result. In *Ussery,* a grantor conveyed nine sections of mineral classified land to certain grantees, reserving one-half of all amounts received by the grantees if the grantees leased the land. Pursuant to the agreement, the grantees paid the grantors after the first lease; however, the grantees refused to pay the grantors the agreed amount on the second lease because, they said, the agreement was illegal under the Relinquishment Act [2] and could not be enforced.

In refusing the grantors' argument that the agreement was such a material part of the deal that they were entitled to either rescission of the deal or cancellation of the deed, the court explained:

> We do not believe that the illegality or invalidity of the provision or covenant ... requires the court to set aside the entire deed and transfer of property. If the covenant [sic] were legal, there is no allegation of bad faith on the part of anyone in this matter, nor any allegation of fraud;

**2.** Under the Relinquishment Act, the owner of the surface of mineral classified lands was an agent of the State of Texas for the purpose of

leasing such land for oil and gas. *Ussery,* 391 S.W.2d at 499.

and in the absence of these elements, we do not believe cancellation and/or rescission of the executed conveyance should be granted for failure of the grantees to perform some act in the future, even assuming such acts to be legal. We believe, and so hold, that the provision in question here was a mere covenant or promise that was illegal from its inception, but does not, as such, vitiate the entire deed. It is apparent from the record that both parties knew about the Relinquishment Act and willingly agreed to this particular provision or covenant. The subsequent discovery that this one provision of the deed was illegal would not, in our opinion, constitute grounds to cause the entire deal, or deed, to be declared invalid and entitled to cancellation.... Therefore, the only taint was the attempt on the part of the grantors to reserve something which they had no right to reserve.

*Id.* at 500.

The court went on to also deny the grantors recovery for mineral revenue from the land, noting "there can be no enforceable demand emanating therefrom for either its payment or specific performance." *Id.* In support of that conclusion, the court cited the holding in *Blaine v. Blaine,* 207 S.W.2d 989 (Tex.Civ.App.—Dallas 1947, writ ref'd n.r.e.) in which, in considering a similar situation, the court stated, "[A]s between the parties to a contract, who are in equal fault, no right exists which a court of justice will enforce." *Ussery,* 391 S.W.2d at 500.

If the testamentary forgiveness agreement be considered severable from the rest of the contract, the question before the *Ussery* court would be analogous to the one before us and that court's reasoning persuasive. Appellants' quest to escape liability on the note or to recover damages based on that liability can only be based upon enforcement of the illegal forgiveness agreement and,

hence, "no right exists which a court of justice will enforce."

■ Appellants also argue the Browder Group should be denied recovery based upon promissory estoppel. Again, we disagree. Estoppel, an equitable relief, cannot be based upon an illegal covenant. In the words of the *Ussery* court, "[T]o hold otherwise would be to say that an illegal covenant—and here, one that is against public policy—could be legalized by estopping one party from declaring and resting upon its illegality." *Ussery,* 391 S.W.2d at 502.

Appellants also ask us to hold they have established title by limitation under sections 16.024 [3] and 16.030 [4] of the Texas Civil Practice and Remedies Code. However, as we mention above, the Browder Group has never contested appellants' title to the Donley County property. The Browder Group, by seeking the relief which they seek in this proceeding is, rather, recognizing the validity of the deed conveying the Donley County property. The note is payable in installments not barred by limitation. Sections 16.024 and 16.030 are not applicable to a situation such as that before us.

In sum, appellants' points of error are overruled and the judgment of the trial court affirmed.

## ON MOTION FOR REHEARING

■ In their motion for rehearing, appellants cite *Leder v. Stout,* 278 S.W.2d 546 (Tex.Civ.App.—Amarillo 1954, writ ref'd) for the general rule that an unqualified agreement to perform a certain act includes the performance of those things which will enable or permit one to fulfill the obligation. *Id.* at 548. Appellants then contend the record demonstrates a means by which Mullan could have performed her promise. They argue that to make an effective transfer of the remaindermen's interests, thereby fulfilling her obligation under the contract, Mullan should have "acquired the interest of the

---

**3.** Suit to recover real property held by another in peaceable and adverse possession under title or color of title must be brought not later than three years after the day the cause of action accrues. Tex.Civ.Prac. & Rem.Code § 16.024 (Vernon 1986).

**4.** If such an action is time barred, the person who holds the title in peaceable and adverse possession has full title, precluding all claims. Tex.Civ.Prac. & Rem.Code § 16.030 (Vernon 1986).

remainderman by purchase, and the rule of law propounded by the *Edds* court remains inviolate."

■■■■ In making this argument, appellants rely on the doctrine of merger, which is defined as the absorption or extinguishment of one estate into another. *West v. Seigler,* 265 S.W.2d 618, 620–21 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.). When a greater and lesser estate, *i.e.,* a life estate and a remainder interest, unite in the same person, in the same right, and without any intervening estate, merger is accomplished. *See Estes v. Estes,* 267 S.W. 709 (Tex.Comm'n App.1924). However, we note that the doctrine of merger of estates is not favored, and does not apply where it is the intention of the parties that it should not apply and when it is in the interest of the holder of the two estates to keep them separate. *West,* 265 S.W.2d at 620–21, *citing Humphreys–Mexia Co. v. Gammon,* 113 Tex. 247, 254 S.W. 296 (1923); 29 A.L.R. 607; 31 C.J.S., Estates § 124, p. 143.

Underlying and supporting appellants' argument is the proposition that when two constructions of a contract are possible, courts will give preference to the construction which does not result in violation of the law. *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146 (1947). Appellants argue Mullan should be required to "perform her undertaking in a lawful manner if possible," but acknowledge the holding in *Lewis* that a contract to do something which cannot be performed without a violation of the law is void. *Id.* However, *Lewis* also holds that where the illegality does not appear on the face of the contract, it will not be held void unless the facts showing its illegality are before the court. *Id.,* 199 S.W.2d at 149. In this case, illegality appears on the face of the contract and the facts showing its illegality were before the trial court.

Reference to the Contract of Purchase and Sale of Real Property reveals that Mullan expressly promised that to make her forgiveness of debt on the date of her death "legally effective Seller Covenants that she will make and execute a will, or codicil to a Last Will and Testament meeting the requirements of the statute of wills...." Two paragraphs

later, Mullan promised to furnish an abstract of title to appellants, and to allow them a reasonable time to examine it for good and merchantable title of record, agreeing to cure any defects of record found by the title examination.

Mullan's promise to execute a codicil indicates the illegality of the consideration of the contract. Mullan made an express and unambiguous promise to make the forgiveness of debt effective by executing a codicil, and she subsequently executed such a codicil in an attempt to forgive the debt. She did not expressly promise to acquire the remainderman's interest, nor do we have reason to imply that she promised to do so. This is not a situation in which the contract could have been performed in a legal or an illegal manner, thereby indicating that we should not declare it void simply because it could have been performed in an illegal manner. Mullan made an express promise to do that which she could not do. She promised to make a testamentary disposition of her life estate in the Donley County property. Bess's will was of public record, and the contract itself provided opportunity for the remainderman's interest to be discovered. Yet, appellants chose to enter into this contract relying on Mullan's promise to execute a codicil to her will, and failing to include the remainderman in the transaction.

Appellants also argue that the illegal consideration permeates the entire transaction because without the contract, there would be no note or deed of trust. However, as we noted in our original opinion, the warranty deed with vendor's lien, the deed of trust promissory note, and the deed of trust make no reference to the contract of purchase and sale, let alone Mullan's promise to forgive the debt upon her death.

In sum, while Mullan's acquisition of the remainderman's interest would have caused her to have fee simple title, she did not promise to do so; therefore, she did not breach the contract in which she promised to make forgiveness of the debt effective by executing a codicil. Because the consideration for the contract was unlawful, the contract is of no effect and we leave the parties

as we find them—with a valid warranty deed, deed of trust and promissory note.

Accordingly, we remain satisfied with our original disposition of the case and appellants' motion for rehearing is overruled.