Ronald J. HERRMANN, Karen H. Herrmann, and Columbia Realty, Limited, Appellants,

v.

Glenn K. LINDSEY and Cynthia Lindsey, Appellees.

No. 04–02–00184–CV.

Court of Appeals of Texas, San Antonio.

March 31, 2004.

Ellen B. Mitchell, Cox & Smith Incorporated, Todd A. Prins, Law Offices of Todd A. Prins, San Antonio, for appellants.

V.E. Lanfear, Jr., San Antonio, for appellees.

Sitting: CATHERINE STONE, Justice (concurring in judgment) PAUL W. GREEN, Justice SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by PAUL W. GREEN, Justice.

### ON MOTION FOR REHEARING

The motion for rehearing is denied. However, the opinion and judgment issued February 19, 2003 are withdrawn and the following are substituted.

\*　　\*　　\*

In this case we decide the effect of an illegal reservation of water rights in a deed conveying land. Ronald J. Herrmann and his wife, Karen H. Herrmann (the Herrmanns), purchased a tract of land in Medina County, Texas, together with the rights to an application for an irrigation water pumping permit (the permit application) that was associated with the land.[1] Later, in two separate transactions, each representing one-half of the permit application rights, the Herrmanns transferred the permit application rights to a company they owned called Columbia Realty, Limited (Columbia). At the time of the application transfers, the Herrmanns believed the transfers to Columbia were permitted and, indeed, they were later approved by the Edwards Aquifer Authority (the Authority).[2] The Herrmanns then put the land up for sale.

1. In 1993, the Legislature enacted the Edwards Aquifer Authority Act ("the Act") to manage the pumping of water from the Edwards underground aquifer and to sustain the diverse economic and social interests dependent upon it. *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 731 (Tex.2002). The Authority is charged with regulating groundwater withdrawals from the aquifer by a permitting system. *Id.* The ownership of permits issued by the Authority and applications for such permits are generally transferrable. *See Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 630 (Tex. 1996). The Act, however, imposes certain limitations on one's ability to transfer a permit or application for a permit. Act of May 30, 1993, 73rd Leg., R.S., ch. 626, 1993 Tex. Gen. Laws 2350, as amended by Act of May 16, 1995, 74th Leg., R.S., ch. 524, 1995 Tex. Gen. Laws 3280, Act of May 28, 1995, 74th Leg., R.S., ch. 261, 1995 Tex. Gen. Laws 2505, Act of May 6, 1999, 76th Leg., R.S., ch. 163, 1999 Tex. Gen. Laws 634, and Act of May 27, 2001, 77th Leg., R.S., ch. 966, §§ 2.60–2.62 and 6.01–6.05, 2001 Tex. Gen. Laws 1991, 2021–22, 2075–76. Section 1.34 of the Act governs the transfer of a permit or application for a permit. *Id.* § 1.34. Section 1.34 provides:

> [a] permit holder may lease permitted water rights, but a holder of a permit for irrigation use may not lease more than 50 percent of the irrigation rights initially permitted. The user's remaining irrigation water rights must be used in accordance with the original permit and must pass with the transfer of the irrigated land.

*Id.* Thus, fifty-percent of the permitted water rights must remain with the irrigated land and is not transferrable. This half of the water rights is known as the "base irrigation groundwater" (BIG). The other half of the water rights that may be transferred away from the irrigated land is known as the "unrestricted irrigation groundwater" (UIG). At the time of the summary judgment hearing, the permit at issue had yet to be approved, therefore, the case involves the rights and benefits which accompany a permit application, which is transferable as is an approved permit.

2. The Authority explained that in the transfer of the base irrigation groundwater to Columbia, the purpose of and use of the water for irrigation of the land on which the well is located did not change. Therefore, the transfer, even though nominally a transfer to an entity other than the owner of the land, was not a violation of section 1.34. However, the transfer had a limited value because, as happened in this case, sale of the land would void the transfer.

Glenn Lindsey responded to the Herrmanns' offer of sale and the parties ultimately entered into a contract to convey the land to Lindsey. The contract specifically provided that the irrigation pumping rights associated with the permit application were excluded from the sale and were reserved by the Herrmanns.[3] The transaction was fully executed when Lindsey paid the agreed price and the Herrmanns delivered a warranty deed to Lindsey. The deed reflects the parties' intent not to transfer any of the irrigation pumping rights to Lindsey with the land.[4]

Thereafter the parties discovered that the Edwards Aquifer Authority Act permitted only one-half of the irrigation pumping rights to be severed from the land—these water rights are referred to as the "unrestricted irrigation groundwater." The remaining one-half of the water pumping rights are referred to as the "base irrigation groundwater" and cannot be severed from the land. This revelation put in doubt the validity of the Herrmanns' second water transfer to Columbia, which consisted of the base irrigation groundwater, as well as putting into question the effectiveness of the reservation in the Lindsey deed as it pertained to the base irrigation groundwater. In response, the Herrmanns and Columbia sued Lindsey and his wife, Cynthia Lindsey, for a declaratory judgment that the transfer to

Columbia of the base irrigation groundwater was legal, a contention they later abandoned. The Lindseys countersued, claiming that as landowners the Act entitled them to the irrigation pumping rights that could not be legally transferred from the land. The Herrmanns responded to the countersuit by asserting affirmative defenses of lack of consideration, mutual mistake, and illegality.[5] The Herrmanns seek to set aside the transaction in its entirety.

The Lindseys thereupon filed a notice of transfer with the Authority contending they became owners of the base irrigation groundwater when they purchased the land from the Herrmanns. The Authority agreed and entered an order in the Lindseys' favor. The order reversed and voided the Authority's previous approval of the Herrmanns' second water transfer to Columbia, and further held that the Herrmanns' conveyance of the land to the Lindseys effectuated a valid transfer of the base irrigation groundwater to the Lindseys.

The Lindseys moved for summary judgment on their counterclaim, asserting their ownership of the land entitled them to one-half of the irrigation pumping application rights, as ruled by the Authority. The trial court granted the Lindseys' motion for summary judgment and reformed the Lindseys' warranty deed to reserve only

---

**3.** This reservation of pumping rights referred to the permitted right to withdraw groundwater for irrigation purposes. Specifically excluded from the reservation was the landowner's right, exempted from the permitting rules, to pump up to 25,000 gallons of groundwater per day for domestic and livestock use.

**4.** The deed includes the following language: "Reservations from Conveyance and Warranty: For Grantor, a reservation of all water rights limited to those water rights specified in the Edwards Aquifer Authority Application for Permit designated by the Edwards Aquifer

Authority as Docket No. ME00350 for the withdrawal of 286.22 acre feet of water, except such rights allowed to be withdrawn for domestic and livestock use not exceeding 25,000 gallons in a day." Even though the pumping rights had already been transferred to Columbia, the reservation in the deed made it clear to anyone reading the document that the water rights belonged to the Herrmanns or their assigns and did not go with the land.

**5.** Other defenses asserted in the trial court, including fraud, have not been raised in this appeal.

one-half of the permit application rights to the Herrmanns.[6] The Herrmanns appeal this ruling.

## STANDARD OF REVIEW

We review a summary judgment order *de novo* utilizing traditional standards. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985).

## DISCUSSION

■ As a preliminary matter, the Herrmanns claim the Lindseys' motion for summary judgment incorrectly alleges the Lindseys were entitled to judgment pursuant to Texas Rule of Civil Procedure 166a(i). *See* TEX.R. CIV.P. 166a(i) (providing "[a]fter adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial"). We believe the Herrmanns are correct in their contention; however, they are not entitled to reversal based on the Lindseys' incorrect reference to Rule 166a(i) because they did not file any special exceptions to the pleadings. *See* TEX.R. CIV. P. 90 (providing a party waives any defect, omission, or fault in a pleading not specifically pointed out by special exception). The Herrmanns have thus waived their right to complain of this defect. Because both the trial court and the Herrmanns treated the Lindseys' motion as one for summary judgment under Rule 166a(c), we too shall treat the Lindseys' motion as a "traditional" motion for summary judgment. *See* TEX.R. CIV. P. 166(c). We now turn to the merits of the Herrmanns' case.

At oral argument, counsel for the Herrmanns admitted that the attempted severance of the base irrigation groundwater from the land violated section 1.34 of the Edwards Aquifer Authority Act and was illegal. Thus it is unchallenged that the base irrigation groundwater belongs to the owner of the land. The Herrmanns dispute Lindsey's claim of title to the water rights by challenging his title to the land. They say the conveyance to Lindsey fails because the parties never intended for Lindsey to own any of the permitted irrigation pumping rights.

### *Illegality*

■ The Herrmanns argue the trial court erroneously granted summary judgment in favor of the Lindseys because an issue of fact exists as to whether the parties would have entered into the conveyance in the absence of the water reservation provision. We disagree. It is clear from the record that the water reservation was material to the transaction. The contract and the deed plainly spelled out the parties' intent to reserve all the irrigation pumping rights to the Herrmanns. The issue then is whether the Lindseys are entitled to reformation of the deed to reflect a reservation of only one-half of the irrigation pumping rights. We hold they are.

■ "It is the settled law of this State that our courts will neither aid in the enforcement of an illegal executory contract, *nor relieve from an illegal contract, a party who has executed it.*" *Morrison v. City of Fort Worth,* 138 Tex. 10, 155

---

6. The court thereafter severed the Herrmanns' claims for slander and defamation and granted the Lindseys' motion to dismiss the claims for breach of contract, breach of warranty, fraud, negligent misrepresentation, deceptive trade practices, fraud in a real estate transaction, and conspiracy.

S.W.2d 908, 909 (1941) (emphasis added). "[A] party to a contract prohibited by law which has been executed by delivery of property thereunder may not secure the aid of a court to recover said property delivered under said contract. Rather the policy of the law is to leave the parties to such executed, unlawful contract in the position in which they, by their voluntary acts, have placed themselves." *Kennard v. McCray*, 648 S.W.2d 743, 746 (Tex.App.-Tyler 1983, writ ref'd n.r.e.); *accord Montgomery v. Browder*, 930 S.W.2d 772, 779 (Tex.App.-Amarillo 1996, writ denied); *Ussery v. Hollebeke*, 391 S.W.2d 497, 500 (Tex.Civ.App.-El Paso 1965, writ ref'd n.r.e.); *Blaine v. Blaine*, 207 S.W.2d 989, 994 (Tex.Civ.App.-Dallas 1947, writ ref'd n.r.e.). In cases where only a part of the executed contract is illegal, courts have refused to enforce the illegal provision, leaving the remaining transaction to stand as executed by the parties. *See Montgomery*, 930 S.W.2d at 779-80 (refusing to enforce illegal contract agreement to forgive debt but upholding otherwise valid deed conveying land); *Ussery*, 391 S.W.2d at 501-02 (refusing to enforce illegal covenant reserving one-half the mineral rights to land but upholding otherwise valid deed conveying the land at issue).[7]

In this case, the attempted reservation of all the irrigation pumping rights to the Herrmanns is illegal. The law requires that one-half the irrigation pumping rights remain with the owner of the land. The deed, however, is an otherwise valid conveyance of property. The reformation of the deed as set forth by the trial court reflects the effect of the law on the conveyance of the property.[8] Under these circumstances, we hold the Lindseys proved they were entitled to reformation of the deed and the trial court did not err in its judgment.

### The Affirmative Defenses

In addition to claiming the illegal provision voids the entire transaction, which we have addressed, the Herrmanns seek to rescind the deed and divest the Lindseys of their title to the property based on two affirmative defenses. The Herrmanns say there is a failure of consideration because the Lindseys did not pay for the water rights they received. *See Federal Sign v. Texas Southern Univ.*, 951 S.W.2d 401, 409 (Tex.1997) (failure of consideration renders contract unenforceable). They also argue the mistake in including the illegal reservation should be treated as a mutual mistake of fact, which allows for equitable rescission of the contract. *See Green v. Morris*, 43 S.W.3d 604, 606 (Tex.App.-Waco 2001, no pet.) (where mutual mistake

---

7. The Herrmanns contend the illegal reservation was material to the contract, making the agreement void. In their post-submission letter brief, the Herrmanns cite *In re Kasschau*, 11 S.W.3d 305 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding), for the proposition that unless an illegal provision in a deed is severable, "a deed that contains an illegal provision is void in its entirety." *Kasschau*, 11 S.W.3d at 313. *Kasschau* does not say that about a deed at all. *Kasschau* involves a mediated settlement agreement which contained an illegal provision. The court applied well-settled principles concerning the unenforceability of illegal provisions and said that "where part of the consideration for an agreement is illegal, the entire agreement is void if the contract is entire and indivisible." *Id.* *Kasschau* provides no help concerning the validity of a delivered warranty deed.

8. On motion for rehearing, the Herrmanns make much of the fact that this court affirmed the trial court's judgment which reformed the deed in favor of the Lindseys when the result was anything but equitable for the Herrmanns. The same criticism could be said of this court by the Lindseys if we were to reverse the summary judgment for a trial on whether the Lindseys should be dispossessed of their title because of a mistake of law.

of fact exists, parties entitled to rescind contract and be restored to pre-contract positions).

These contentions are based on well-established contract principles. The problem, however, is that the contract between the parties no longer exists; there is nothing left to be enforced. The consideration has been paid and the deed has been delivered. Consequently, contract rules no longer apply, and we must look to other principles of law to determine the rights of the parties. Unfortunately for the Herrmanns, the news is not good.

■■ First, as discussed, a party to an illegal contract that has been fully executed may not seek the aid of a court either to enforce or set aside the transaction. Accordingly, it appears the Herrmanns are not entitled to raise lack of consideration [9] or mutual mistake as affirmative defenses. In the alternative, we note the grantor of a deed is afforded no right of rescission by reason of total or partial failure of consideration. *See Uriarte v. Petro,* 606 S.W.2d 22, 24 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Austin Lake Estates Recreation Club, Inc. v. Gilliam,* 493 S.W.2d 343, 347 (Tex.Civ.App.-Austin 1973, writ ref'd n.r.e.); *Munguia v. Paiz,* 404 S.W.2d 47, 48 (Tex.Civ.App.-San Antonio 1966, no writ).

■ Finally, a mistake of law is not a ground for rescission or cancellation of a deed. *See Ussery,* 391 S.W.2d at 501–02. Arguing that the mistake in this case should be treated as a mutual mistake of fact, the Herrmanns cite authority stating:

> Whenever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights ... and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, ... equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact.

*1st Coppell Bank v. Smith,* 742 S.W.2d 454, 462 (Tex.App.-Dallas 1987, no writ).[10] However, "[t]he deciding factor in Texas cases, in distinguishing between antecedent legal rights and general law, appears to be whether the party seeking rescission complains of mistaken legal effect of the document he seeks to rescind, or of his belief as to the state of the law which caused him to execute the agreement." *1st Coppell Bank,* 742 S.W.2d at 462. We understand the difference to be that if the parties enter into the contract at issue based on a mutual mistake about some legal right a party possesses or does not possess *prior to* the contract at issue, the party may be entitled to rescission of the contract on equitable grounds. *See, e.g., 1st Coppell Bank,* 742 S.W.2d at 462 (parties entered into settlement agreement based on mistaken belief that *prior* forged deed was valid); *Plains Cotton Coop. Ass'n v. Wolf,* 553 S.W.2d 800, 803–04 (Tex.Civ.App.-Amarillo 1977, writ ref'd n.r.e.) (plaintiffs entitled to relief where they entered into written contract on mistaken belief that *prior* oral contract already bound them to sell cotton at the contract price); *Emery v. Emery,* 75 S.W.2d 725, 731 (Tex.Civ.App.-Dallas 1934,

---

9. This appears particularly true when the failure of consideration, as here, arises solely from the presence of the illegality. *See Kennard,* 648 S.W.2d at 745–46 (widow could not set aside deceased husband's conveyance of royalties on grounds that former wife's agreement to forgo child support in exchange was illegal consideration).

10. *Disapproved on other grounds, Fortune Production Co. v. Conoco, Inc.,* 52 S.W.3d 671 (Tex.2000).

writ dismissed) (on rehearing) (parties entered into written agreement based on mistaken belief that *prior* oral contract was not binding).

■ We are not persuaded that the parties' mistake in this case should be treated as a mistake of fact. Neither party was mistaken as to the facts surrounding the transaction. The parties were not mistaken that the prior transfer to Columbia was permissible under the Edwards Aquifer Authority Act. All parties agreed to reserve the irrigation pumping rights to the Herrmanns, knowing that transfers and reservations of pumping rights are controlled by the Act. The parties were only mistaken as to the effect of the Act on the attempted reservation to the Herrmanns in this conveyance. Such a mistake is a mistake of law and not grounds for rescission of the deed. *See Ussery*, 391 S.W.2d at 502.

CONCLUSION

Despite the seeming unfairness of awarding the Lindseys something they neither bargained nor paid for, the Herrmanns have no remedy in the form of rescinding or canceling the deed. The Lindseys proved they are the owners of one-half of the permitted water rights pursuant to the Edwards Aquifer Authority Act and therefore entitled to have the deed reformed to reflect their interest. Accordingly, the trial court's judgment is affirmed.