**James H. OWEN, Appellant/Cross–Appellee**

v.

**JIM ALLEE IMPORTS, INC. d/b/a Rusty Wallis Volkswagen, Appellee/Cross–Appellant.**

No. 05–10–01021–CV.

Court of Appeals of Texas, Dallas.

Aug. 29, 2012.

Charles "Chad" Baruch, The Law Office of Chad Baruch, Rowlett, TX, for Appellant/Cross–Appellee.

Tracey E. Gajak, Sullivan, Parker & Cook, LLC, Kent F. Brooks, Law Office of Kent F. Brooks, Dallas, TX, for Appellee/Cross–Appellant.

Before Justices BRIDGES, FITZGERALD, and LANG.

## OPINION

Opinion By Justice BRIDGES.

Appellant/Cross–Appellee James H. Owen appeals from the trial court's order granting Jim Allee Imports, Inc. d/b/a Rusty Wallis Volkswagen's ("RW") motion for sanctions. In eight issues, Owen contends the trial court erred in concluding that: (1) an intermediate appellate court's decision that rejects a legal theory makes any subsequent lawsuit, filed within the deciding court's jurisdiction and based on that theory, sanctionable; (2) he lacked a good faith argument for the reversal of this Court's decisions concerning the inclusion of financed negative equity in a new vehicle's cash price; (3) the Texas Finance Code provisions permitting the financing of negative equity rendered Krisle's claims groundless; (4) Krisle's knowledge that the dealer was financing her negative equity barred her from pursuing any claim for violation of the cash price provisions; (5) the legislature's 2009 statutory amendments, eliminating civil recovery for cash price violations, could be applied retroactively to bar Krisle's claims; (6) any information Owen may have withheld from Krisle could support the imposition of sanctions; (7) RW established that Owen lacked any factual basis for alleging DTPA, fraud, and intentional infliction of emotional distress claims on behalf of Krisle; and (8) sanctions were properly awarded against him under rule 13 or the DTPA. RW responds to Owen's issues and raises a single cross-point, arguing this appeal is frivolous under rule 45 of the Texas Rules of Appellate Procedure and, thereby, warrants an award of just damages against Owen. We affirm.

## BACKGROUND

In August of 2007, Rhonda Krisle purchased a Volkswagen Eos from RW. The sticker price for the Eos was $35,964. Krisle was "upside-down" on her trade-in and agreed to finance her negative equity as part of the purchase price of the Eos. Krisle ultimately entered into a retail installment contract with RW and financed $46,437.27 to purchase the car. This amount included the balance of Krisle's trade-in, listed as $14,500, in addition to tax, title, license and other fees.

Following her purchase, Krisle heard a radio advertisement[1] by the Weinstein Law Firm[2] that caused her to visit the firm's website. After determining she might have been a victim of fraud, Krisle contacted the law firm and spoke with an employee who requested she send in the purchase contract and the window sticker. Krisle sent those documents and subsequently received a letter from the firm indicating that she appeared to have a claim. Krisle retained the Weinstein Law Firm to represent her.

Krisle testified she did not hear from the Weinstein Law Firm again until she contacted them in May of 2009, almost six

---

1. Krisle testified during her deposition that the advertisement basically indicated that if she was upside-down on her trade-in and if she traded it in for a new car, she may have been a victim of auto finance fraud.

2. Krisle used the name "Weinstein Law Firm" during her deposition. Our review of the pleadings filed in the trial court reflect the name of the firm was "Jeffrey L. Weinstein, P.C." For simplicity; however, we will also refer to the firm as the "Weinstein Law Firm."

months later, in order to request the status of her case. At that point, an employee of the firm notified Krisle that a lawsuit had been filed on her behalf. Krisle had not received a copy of the lawsuit that had been filed on her behalf on April 20, 2009, alleging claims for fraud, violations of the Texas Finance Code, money had and received, DTPA violations, intentional infliction of emotional distress, and promissory estoppel.

In December of 2009,[3] Owen, an attorney with the Weinstein Law Firm, contacted Krisle about a court-ordered mediation that needed to take place by December 29, 2009. During their conversation, Krisle indicated to Owen her willingness to mediate the case. In a December 29 email, Owen made an offer of settlement to RW's counsel in the amount of $7,000 contingent upon RW's acceptance prior to mediation. Krisle testified she was never told a $7,000 offer had been made to settle her case.

Krisle did not mediate the case and, as of the date of her deposition,[4] she still did not know why the case had not been mediated. A December 28, 2009 email from the mediator's office; however, states they were told by the Weinstein Law Firm that the firm had not been able to contact Krisle. On January 1, 2010, the mediator again contacted the Weinstein Law Firm in an attempt to obtain Krisle's available dates for the mediation. Krisle testified she did not recall being contacted regarding her availability.

On February 22, 2010, RW filed its motion for summary judgment, asserting negative equity and this Court's decision in *Bledsoe Dodge, LLC v. Kuberski*[5] as a basis for a take nothing summary judgment on Krisle's Texas Finance Code claims. Krisle stated she did not receive a copy of the motion. Krisle testified she learned of the motion for summary judgment when an employee of the Weinstein Law Firm called her, requesting she sign an affidavit to be attached to her response. Within a few days of signing the affidavit, an employee of the Weinstein Law Firm called Krisle about dismissing her case due to the "Dallas case." Krisle agreed to non-suit her claims and, therefore, thought there would be no need to respond to RW's motion for summary judgment.

However, Owen, on behalf of Krisle, responded to the motion and amended Krisle's petition on March 15, 2010. Krisle testified she was unaware her petition had been amended. The first amended petition dropped all of her claims, except for her cash price claim under the Texas Finance Code. A few days later, Krisle filed a non-suit of all claims. Owen signed all of the pleadings filed on behalf of Krisle.

On March 24, 2010, RW filed its motion for sanctions against Krisle and her attorneys of record, Owen and Jeffrey Weinstein, under rule 13 of the Texas Rules of Civil Procedure, sections 9.012 and 10.001 of the Texas Civil Practice & Remedies Code, and section 17.50(c) of the DTPA. RW then proceeded to take the deposition of Krisle. Based upon the deposition of Krisle, RW filed its nonsuit, with prejudice, of all claims against Krisle and the trial court dismissed those claims. Owen and Jeff Weinstein responded to the motion for sanctions. Following a hearing on the motion, the trial court granted RW's motion for sanctions against Owen in the amount of $20,000.[6] The trial court en-

---

3. Krisle indicated Owen contacted her before Christmas, or before December 25, 2009.

4. May 4, 2010.

5. 279 S.W.3d 839 (Tex.App.-Dallas 2009, no pet.).

6. In addition to the $20,000, the trial court ordered Owen to pay: (1) $7,500 in the event

tered its order on July 6, 2010 and then amended the order at the request of RW, deleting all references to chapter 9 of the Texas Civil Practice and Remedies Code, on July 19, 2010. Thus, the amended order awarded sanctions to RW pursuant to rule 13 of the Texas Rules of Civil Procedure ("rule 13"), section 10.001 of the Texas Civil Practice and Remedies Code ("section 10"), and section 17.50(c) of the DTPA ("section 17.50(c)").

## ANALYSIS

### A. Standard of Review

 We review the imposition of sanctions under an abuse of discretion standard. *See Low v. Henry,* 221 S.W.3d 609, 614 (Tex.2007) (discussing standard of review for both rule 13 and chapter 10 sanctions); *Mosk v. Thomas,* 183 S.W.3d 691, 696 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (DTPA standard). An appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Cire v. Cummings,* 134 S.W.3d 835, 838–39 (Tex.2004). To determine if the sanctions were appropriate or just, we must ensure that there is a direct nexus between the improper conduct and the sanction imposed. *Spohn Hosp. v. Mayer,* 104 S.W.3d 878, 882 (Tex.2003).

### B. Rule 13, Section 10, and Section 17.50(c)

 Rule 13 and section 10 permit the trial court to sanction an attorney or party for filing motions or pleadings that lack a reasonable basis in fact or law. *See Low,* 221 S.W.3d at 614. Rule 13 provides that the signature of an attorney constitutes a

certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. TEX. R. CIV. P. 13. "Groundless" means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. *Id.*

Section 10 provides, in pertinent part, as follows:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:
>
> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
> (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (West 2010). Thus, under section 10, the signer of the pleading or motion certifies that *each* claim and *each* allegation is based on the signatory's best knowledge,

---

of an unsuccessful appeal to this Court; (2) $2,000 in the event of an unsuccessful petition to the Texas Supreme Court; and (3) $5,500

in the event of an unsuccessful appeal to the Texas Supreme Court.

information, and belief, formed after reasonable inquiry. *See Low,* 221 S.W.3d at 615.

■ Section 17.50(c) provides:

On a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs.

TEX. BUS. & COM.CODE ANN. § 17.50(c) (West 2010). The term "groundless" in this section has the same meaning as it does under rule 13, *i.e.,* "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Donwerth v. Preston II Chrysler–Dodge, Inc.,* 775 S.W.2d 634, 637 (Tex.1989).

## C. Owen's Appeal

As we have already noted, Owen challenges the trial court's award of sanctions against him by raising eight issues for our consideration.

### 1. *Filing and Maintaining a Lawsuit in Spite of Existing Law to the Contrary*

■ In his first issue, Owen contends the trial court erred in concluding that an intermediate appellate court's decision that rejects a legal theory makes any subsequent lawsuit, filed within the deciding court's jurisdiction and based on that theory, sanctionable. Specifically, Owen argues the "trial court assessed sanctions principally based upon its erroneous conclusion that this court's decisions in

[*Bledsoe* ][7] and *Stephens* [8] rendered Ms. Krisle's cash price claim legally unsupportable."

In *Bledsoe,* this Court considered the appeal from a judgment awarding damages for a cash price violation. *Bledsoe Dodge, L.L.C. v. Kuberski,* 279 S.W.3d 839, 841 (Tex.App.-Dallas 2009, no pet.). Like the case before us, *Bledsoe* involved the purchase of a vehicle in which the sales contract, as negotiated, rolled the negative equity into the purchase price. *Id.* We concluded that negative equity is not a finance charge and, thus, the evidence was insufficient to establish a cash price violation. *Id.* at 843–44.

In *Stephens,* Owen, as co-counsel for the Stephenses, brought an appeal of a take nothing judgment in favor of Friendly Chevrolet. *Stephens v. Friendly Chevrolet, Ltd.,* No. 05–08–00881–CV, 2009 WL 3385283, *1 (Tex.App.-Dallas Oct. 22, 2009, no pet.) (mem. op.). There, the Stephenses argued the trial court erred in its conclusion that a lender does not violate the Texas Finance Code when it includes financed negative equity in the stated cash price of a retail installment contract for a vehicle. *Id.* In that opinion, we noted that, although the Stephenses acknowledged that *Bledsoe* was dispositive, they urged that it was wrongly decided and should not be followed. *Id.* We declined to revisit the issue in that case and, based on the reasoning in *Bledsoe,* concluded the trial court did not err. *Id.*

In the case now before us, the trial court found:

[Owen] was also aware of the decisions of the Dallas Court of Appeals in both

---

7. *Bledsoe Dodge, L.L.C. v. Kuberski,* 279 S.W.3d 839 (Tex.App.-Dallas 2009, no writ). Owen references this Court's decision as "Kuberski" in his brief. To remain consistent with the trial court's order; however, we re-

fer to the decision as "Bledsoe" in this opinion.

8. *Stephens v. Friendly Chevrolet, Ltd.,* No. 05–08–00881–CV, 2009 WL 3385283 (Tex.App.-Dallas Oct. 22, 2009, no pet.) (mem. op.).

284

[*Bledsoe* and *Stephens*], the latter of which [Owen] served as appellate co-counsel. Despite the foregoing, [Owen] maintains that Bledsoe was wrongfully decided and that there exists a good faith argument for the modification, extension or reversal of *Bledsoe*. Despite the foregoing argument, [Owen] nevertheless advised Krisle that she should nonsuit her case given the existence of a negative 'Dallas case.' Likewise, [Owen's] response to [RW's] motions for summary judgment fail to perfect the issues he indicates serve as the good faith basis for his filing the Krisle suit.

Just as he did in the trial court below, Owen asserts in his brief here that "neither [*Bledsoe*] nor *Stephens* was the subject of any petition to the Texas Supreme Court," and, therefore, "any Texas citizen retained the right—at least until the statutory changes—to pursue a cash price claim based on negative equity, and then seek Supreme Court review if unsuccessful." In essence, Owen argues that decisions of this Court have no binding precedential value unless explicitly approved by the Texas Supreme Court. We cannot agree.

█ The hierarchy of the courts of Texas is established constitutionally. *See* TEX. CONST. art. V, §§ 1, 3(a) ("The Supreme Court shall exercise the judicial power of the state .... Its appellate jurisdiction shall be final and shall extend to all cases except in criminal matters ...."); *Id.* at § 6(a) ("Said Court of Appeals shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be proscribed by law."). Those familiar with Texas court practice are aware that the trial courts must follow the decisions of the intermediate courts in their own geograph-ic region. *See* TEX. GOV'T CODE ANN. § 22.201 (West 2004) (dividing Texas counties into 14 court of appeals districts); TEX. GOV'T CODE ANN. § 22.220(a) (West 2004) ("Each court of appeals has appellate jurisdiction of all civil cases within its district of which the district courts or county courts have jurisdiction ...."). Further, this Court is bound by decisions of the United States Supreme Court, the Texas Supreme Court, *and* prior decisions of this Court. *See Roe v. Ladymon*, 318 S.W.3d 502, 510 n. 5 (Tex.App.-Dallas 2010, no pet.).

In its order on sanctions, the trial court determined, and we agree, the advertising done by the Weinstein Law Firm on its website identified a potential claimant as "a person with negative equity in his or her trade-in whose Retail Installment Contract inflated the trade-in value and the purchase price of the vehicle being acquired." Krisle asserted a claim against RW for a cash price violation. Thus, the facts of this case fall squarely within those presented in *Bledsoe*, which held that no cash price violation is established by these facts. *See Bledsoe*, 279 S.W.3d at 844.

This Court released the *Bledsoe* opinion on January 30, 2009. *Id.* at 839. The record before us shows Owen filed the original petition on behalf of Krisle in a state trial court within the jurisdiction of this Court almost three months after the *Bledsoe* opinion was released. We also note this Court released the *Stephens* opinion, of which Owen was listed as co-counsel, on October 22, 2009. In *Stephens*, we reaffirmed our decision in *Bledsoe*, and concluded a lender does not violate the Texas Finance Code when it includes financed negative equity in the stated cash price of a retail installment contract for a vehicle. *Stephens*, 2009 WL 3385283, at *1. Again, the facts of this case fall squarely within those presented in *Stephens*.

Despite our decisions in both *Bledsoe* and *Stephens,* Owen filed a first amended petition on March 15, 2010, dropping all claims except for the cash price claim under the Texas Finance Code (the very claim *Bledsoe* and *Stephens* address), and filed a response to RW's motion for summary judgment. The response did not address *Bledsoe,* even though *Bledsoe* had been made a basis of RW's grounds for summary judgment on the cash price violation claim. The record then shows that Owen filed its motion for nonsuit four days later due to the negative impact of the "Dallas case" on Krisle's case.

Based upon the record before us, we conclude the cash price violation claim was not warranted by existing law and was groundless. *See* TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE ANN. § 10.001; TEX. BUS. & COM. CODE ANN. § 17.50(c). Thus, the trial court did not abuse its discretion in awarding sanctions to RW.[9] *See Low,* 221 S.W.3d at 614; *Mosk,* 183 S.W.3d at 696. We overrule Owen's first issue.[10]

### 2. Owen's Argument For The Reversal Of This Court's Decisions

■ In his second issue, Owen argues the trial court erred in concluding he lacked a good faith argument for the reversal of this Court's decisions in *Bledsoe* and *Stephens* concerning the inclusion of financed negative equity in a new vehicle's cash price. In this section of his brief, Owen lays out what he believes is a good faith argument. However, Owen fails to cite us to evidence in the record that he made this alleged good faith argument to the trial court. We are not required to search the record to find evidence. *Most*

*Worshipful Prince Hall Grand Lodge v. Jackson,* 732 S.W.2d 407, 412 (Tex.App.-Dallas 1987, writ ref'd n.r.e.) (en banc). Plus, a prerequisite to presenting a claim for appellate review is that the complaint must first be presented to the trial court. TEX. R. APP. P. 33.1.

Nevertheless, the trial court found, and we agree, that RW's motion for summary judgment shows Owen failed to address *Bledsoe,* even though RW specifically raised *Bledsoe* as grounds for granting summary judgment. We also note the response failed to address *Stephens,* even though Owen was co-counsel in the case. In *Stephens,* Owen, as co-counsel for the Stephenses, acknowledged that *Bledsoe* was dispositive of the question of whether a dealer violates the Texas Finance Code when it includes financed negative equity in the stated cash price for a vehicle. *See Stephens,* 2009 WL 3385283, at *1. Yet, here, Owen argues he has a good faith argument for the reversal of *Stephens* and *Bledsoe* concerning the very same issue.

■ We conclude, under the facts of this case, that a true good faith argument that *Bledsoe* and *Stephens* should have been reversed would have been included in Krisle's response to RW's motion for summary judgment. Based on the record before us, it is also reasonable to conclude that if Owen believed he had a good faith argument, he would have advised Krisle to move forward with her case and the summary judgment hearing and would not have used the "Dallas case" as the basis for advising her to dismiss her case

---

9. On appeal, Owen does not challenge the amount of sanctions awarded by the trial court, just the fact they were awarded.

10. "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous." TEX. DISCIPLINARY R. PROF'L CONDUCT R. 3.01.

through a nonsuit.[11] We overrule Owen's second issue.

### 3. Basis of the Lawsuit

In his third issue, Owen contends the trial court erred in concluding the Texas Finance Code provisions, permitting the financing of negative equity, rendered Ms. Krisle's claims groundless. Specifically, Owen argues the trial court erred because "this case has nothing to do with whether a dealer may finance negative equity."

In the first amended petition, Owen alleged, on behalf of Krisle, that Krisle's complaint related to RW's "failure to disclose the statutorily defined 'cash price' in the contract, and contracting for a 'cash price' which exceeds the statutory definition." Owen, however, concedes in the previous section of his brief that "[a]t some point in the discovery process, [he] became aware that the cash price difference *derived from financed negative equity*." (emphasis added). Therefore, it appears as though Owen was aware that this case actually did focus on whether a dealer may finance negative equity, an issue this Court had already addressed in *Bledsoe* and *Stephens*. See *Stephens*, 2009 WL 3385283; *Bledsoe*, 279 S.W.3d at 839. We overrule appellant's third issue.

### 4. Krisle's Knowledge of the Alleged Cash Price Violation

In his fourth issue, Owen argues the trial court erred in concluding Krisle's knowledge that the dealer was financing her negative equity barred her from pursuing any claim for violation of the cash price provisions. Specifically, Owen complains of the trial court's finding that he "intentionally blinded himself to relevant facts and proceeded in filing a lawsuit seeking penalties against [RW], despite the fact that Krisle was aware of and agreeable to the conduct complained of, thus making her *in pari delicto* with [RW]." Owen argues Krisle did not waive her complaints of any violation of the cash price provisions by RW no matter what she knew and authorized. We disagree.

The equitable defense of *in pari delicto*, which literally means "in equal fault," is rooted in the common law notion that a plaintiff's recovery may be barred by his own wrongful conduct. *Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 107 (Tex.App.-San Antonio 2011, pet. denied) (citing *Pinter v. Dahl*, 486 U.S. 622, 632, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988)). As a general rule, Texas courts will neither aid in the enforcement of an illegal executory contract, nor relieve from an illegal contract, a party who has executed it. *Herrmann v. Lindsey*, 136 S.W.3d 286, 290 (Tex.App.-San Antonio 2004, no pet.). Instead, Texas courts leave the parties to such executed, unlawful contracts in the position in which they, by their voluntary acts, have placed themselves. *Id.* at 291.

The Weinstein Law Firm's website solicited consumers, like Krisle, who bought vehicles in a transaction in which they were "upside down" in their trade and which the dealership inflated the trade allowance and sales price of the vehicle. Thus, the website targeted consumers who were *aware* of the structure of the transaction (specifically targeting those transactions which included financed negative eq-

---

11. Krisle testified that Jennifer, an employee of the Weinstein Law Firm, called her and advised her that, given the Dallas case, she should nonsuit her case. Krisle did not believe that Jennifer was a lawyer. Because lawyers are responsible for the actions of the legal assistants they supervise, the actions by Jennifer are imputed to Owen. See *Sellers v. Foster*, 199 S.W.3d 385, 401 (Tex.App.-Fort Worth 2006, no pet.); *Cunningham v. Columbia/St. David's Healthcare Sys., L.P.*, 185 S.W.3d 7, 13 (Tex.App.-Austin 2005, no pet.).

uity). Even if Krisle had a good faith argument that the financing of her negative equity was a violation of law, which we expressly deny,[12] she cannot then benefit from the alleged violation when she was aware of and an active participant in the financing of her negative equity. *See Gen. Elec. Credit Co. v. Smail,* 584 S.W.2d 690, 698 (Tex.1979) (when a consumer is in no way deceived and an active participant in the illegal act, an award of damages for the illegal act would amount to an unjustifiable windfall). We overrule Owen's fourth issue.

### 5. Statutory Amendment as a Bar to Krisle's Claim

In his fifth issue, Owen argues the trial court erred in concluding the legislature's 2009 statutory amendments, eliminating civil recovery for cash price violations, could be applied retroactively to bar Krisle's claims. Effective September 1, 2009, the legislature amended section 348.404 of the finance code, specifically reducing the penalty for violations relating to the inclusion of negative equity in a retail installment contract to only the criminal and administrative components. *See* TEX. FIN. CODE ANN. § 348.404(d) (West 2009). The trial court found that Owen's attempt to recover such a penalty after September 1, 2009 is "demonstrative of his bad faith, given the groundless nature of such claim." We agree with the trial court.

Under the Code Construction Act, section 311.031(b) provides:

> If the penalty ... for any offense is reduced by a reenactment, revision, or amendment of a statute, the penalty ..., if not already imposed, shall be imposed according to the statute as amended.

TEX. GOV'T CODE ANN. § 311.031(b) (West 2005). During the hearing on the motion

for sanctions, Owen admitted he was aware of the amendment to the finance code and that it went into effect on September 1, 2009. He also expressed his familiarity with the Code Construction Act. Despite this knowledge, Owen filed, on behalf of Krisle, a first amended petition and response to motion for summary judgment on March 15, 2010, seeking the very penalty the amendment eliminated.

Under the facts of this case, we conclude the trial court did not abuse its discretion in its award of sanctions against Owen. *See Low,* 221 S.W.3d at 614; *Mosk,* 183 S.W.3d at 696. We overrule his fifth issue.

### 6. Information Withheld from Krisle

In his sixth issue, Owen complains the trial court erred in concluding any information Owen may have withheld from Krisle could support the imposition of sanctions. Specifically, the trial court made the following finding as one of many grounds for imposing an award of sanctions against Owen:

> [Owen] withheld a myriad of relevant information from Krisle that would likely have dissuaded her from initially filing or later maintaining her suit against [RW]. More troubling, the Court FINDS [Owen] withheld information concerning [RW's] Motion for Sanctions, the potential conflict that existed between [Owen] and Krisle and relevant legal decisions.

As we have already noted, Krisle testified that she had not been made aware of or received a copy of the lawsuit that had been filed on her behalf on April 20, 2009. She had not been made aware of the reasons her case did not go to mediation, even though she expressly informed Owen that she would be willing to participate in mediation. She had not been informed of a

12. *See supra* discussion of issues one and two.

$7,000 settlement offer made to RW's counsel on her behalf. Krisle stated she did not receive a copy of RW's motion for summary judgment. Even though Krisle agreed to nonsuit her claims, Owen filed an amended petition and response to RW's motion for summary judgment without Krisle's knowledge or consent. Krisle explained that, had she known about the "Dallas case," she likely would not have filed or maintained her lawsuit against RW.

Krisle further stated that when she found out she was required to give a deposition, the Weinstein Law Firm did not inform her the deposition was requested in relation to RW's motion for sanctions. She did not receive a copy of the motion for sanctions until after she asked the Weinstein Law Firm to try and quash the deposition. Krisle further stated she first received a copy of the original petition, first amended petition, and response to RW's motion for summary judgment—all filed on her behalf—when she received a copy of RW's motion for sanctions and the documents were attached to the motion. Finally, Krisle testified that the Weinstein Law Firm did not explain to her that, because the motion sought sanctions not only against her but also against her lawyers, there was a potential conflict of interest in their representation of her on a going-forward basis.

 In his brief, Owen does not deny or refute these statements made by Krisle with the exception of her final statement that he withheld information about the potential conflict of interest. Yet, Owen merely argues he "disputes" the truth of this statement without making any argument or referring this Court to any evidence in support of his refutation. Owen argues that "nothing about that conduct is sanctionable under any of the provisions cited by the trial court as a basis for its sanction award." However, in determining the reasonable amount of a monetary sanction, the trial court may consider, among other factors, the good or bad faith of the offender, the degree of negligence or frivolousness involved in the offense, the knowledge of the offender, and the relative culpability of the client and her counsel. *See Low*, 221 S.W.3d at 621 n. 5 (providing a non-exclusive list of factors to consider in the application of sanctions). Therefore, based upon the record before us, we conclude the trial court did not abuse its discretion. *See Spohn Hosp.*, 104 S.W.3d at 882. We overrule Owen's sixth issue.

### 7. Lack of Basis for DTPA, Fraud, and Intentional Infliction of Emotional Distress Claims

 In his seventh issue, Owen alleges the trial court erred in concluding RW established that he lacked any factual basis for alleging DTPA, fraud, and intentional infliction of emotional distress claims [13] on behalf of Krisle. With regard to the DTPA and fraud claims, Owen makes the following argument:

No one disputes that Ms. Krisle knew her negative equity was being financed; the question is *how* it was being financed. [RW's] decision to stuff the negative equity into Ms. Krisle's cash price (rather than to disclose it on the negative equity line of the retail installment contract) gave rise to the claim—regardless of whether Ms. Krisle knew the negative equity was being financed.

(Emphasis in original). This is Owen's complete argument regarding the worthiness of the DTPA and fraud claims asserted on behalf of Krisle. Because Owen has failed to cite this Court to any authority for his proposition and has failed to devel-

---

**13.** These claims were later dropped by the first amended petition.

op his argument, we conclude Owen has waived his argument with regard to the DTPA and fraud claims. *See* TEX. R. APP. P. 38.1(h) (appellate brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex.1994) (appellate court has discretion to waive point of error due to inadequate briefing).

■ With regard to the claim for intentional infliction of emotional distress, Owen contends the trial court "could not possibly determine what information [he] possessed at the time he filed suit" since he could not testify to the matter due to the attorney-client privilege. Thus, he argues, "the silence of the record on this point is fatal to the sanctions award." We disagree.

Krisle testified she worked for a law firm and had knowledge of intentional infliction of emotional distress claims. She affirmed that she did not suffer from "severe emotional distress" as a result of her purchase from RW and that a claim for intentional infliction of emotional distress was "beyond the scope" of what she was trying to accomplish through her lawsuit. In addition, Krisle had no knowledge such claim was being filed on her behalf until she received a copy of RW's motion for sanctions with a copy of the original petition attached thereto. Finally, Krisle testified to her general satisfaction with the transaction. During the hearing on the motion for sanctions, Owen testified that his basis for filing the intentional infliction of emotional distress claim was his "understanding that she was upset with the transaction."

■ However, to recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or reck-

lessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex.2003) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex.1998)). Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). Here, the record before us provides no such factual basis for an intentional infliction of emotional distress claim. We conclude the trial court did not abuse its discretion. *See Low*, 221 S.W.3d at 614; *Mosk*, 183 S.W.3d at 696. We overrule Owen's seventh issue.

### 8. Sanctions under Rule 13 and Section 17.50(c)

In his final issue, Owen contends the trial court erred in concluding sanctions were properly awarded against him under rule 13 or section 17.50(c). Specifically, Owen argues sanctions were improperly awarded absent evidence of bad faith or improper purpose.

■ With regard to sanctions awarded pursuant to rule 13, Owen contends RW "had to prove [his] subjective state of mind" to demonstrate his bad faith. While we presume pleadings are filed in good faith, direct evidence of a sanctioned person's subjective intent is not required to rebut the presumption. *See Keith v. Solls*, 256 S.W.3d 912, 919 (Tex.App.-Dallas 2008, no pet.) (citing *Schexnider v. Scott & White Mem. Hosp.*, 953 S.W.2d 439, 441 (Tex.App.-Austin 1997, no pet.)). Intent may be shown by circumstantial evidence as well as direct evidence. *Keith*, 256

S.W.3d at 919. Under an abuse of discretion standard, the trial court judges the credibility of the witnesses and may resolve any conflicting testimony. *See Keever v. Finlan,* 988 S.W.2d 300, 313–14 (Tex. App.-Dallas 1999, pet dism'd). Based on the record before us, we cannot conclude the trial court abused its discretion in concluding Owen filed and maintained the lawsuit in bad faith. *See Keith,* 256 S.W.3d at 919.

Owen next contends the trial court abused its discretion because, to obtain sanctions under section 17.50(c), a suit "must be brought in bad faith or for the purpose of harassment, *and* the court must conclude that the suit was groundless." (Emphasis added). However, section 17.50(c) actually requires:

> On a finding by the court that an action under this section was groundless in fact or law *or* brought in bad faith, *or* brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs.

TEX. BUS. & COM.CODE ANN. § 17.50(c) (West 2010) (emphasis added). We have already determined the trial court did not abuse its discretion in concluding the cash price violation claim was groundless and that, under the record before it, Owen filed and maintained the lawsuit in bad faith. Therefore, an award of sanctions pursuant to section 17.50(c) was warranted. *See Low,* 221 S.W.3d at 614; *Mosk,* 183 S.W.3d at 696. We overrule Owen's eighth issue.

## D. RW's Cross–Appeal

 In a single issue, RW asserts this appeal is frivolous under rule 45 of the Texas Rules of Appellate Procedure and, therefore, warrants an award of just damages to RW. After considering the record, briefs, or other papers filed in this Court, we may award a prevailing party damages if we objectively determine that an appeal is frivolous. TEX. R. APP. P. 45; *Smith v. Brown,* 51 S.W.3d 376, 381 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). An appeal is frivolous when the record, viewed from the perspective of the advocate, does not provide reasonable grounds for the advocate to believe that the case could be reversed. *Smith,* 51 S.W.3d at 381. The decision to grant appellate sanctions is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation. *Id.* Although imposing sanctions is within our discretion, we will do so only in circumstances that are truly egregious. *Id.*

As noted in our discussion of Owen's first issue, the lower courts within our jurisdiction are bound by this Court's prior decisions. *See* TEX. GOV'T CODE ANN. §§ 22.201, 22.220(a) (West 2004). Yet, Owen filed and maintained this lawsuit on behalf of Krisle in spite of this Court's previous decisions in *Bledsoe* and *Stephens.* This Court had already addressed the claim presented in this lawsuit in *Bledsoe.* Still, Owen filed this lawsuit in a state trial court within the jurisdiction of this Court almost three months after *Bledsoe* was decided. In addition, as co-counsel for the Stephenses, he acknowledged *Bledsoe* was dispositive of the issues in *Stephens.* Despite our decisions in both *Bledsoe* and *Stephens;* however, Owen filed a first amended petition on March 15, 2010, dropping all claims except for the cash price claim under the Texas Finance Code (the very claim *Bledsoe* and *Stephens* address), and filed a response to RW's motion for summary judgment. The response did not address *Bledsoe,* even though *Bledsoe* had been made a basis of RW's grounds for summary judgment on the cash price violation claim. The record then shows that Owen filed the motion for nonsuit four days later due to the negative

impact of the "Dallas case" on Krisle's case.

This Court is also bound by this Court's prior decisions. *See Roe*, 318 S.W.3d at 510 n. 5. Yet, in spite of our prior decisions in *Bledsoe* and *Stephens*, which already addressed the claim at issue, Owen filed this appeal. Owen concedes in his brief that *Bledsoe* "undoubtedly was 'negative' " to Krisle's case, and "[*Bledsoe* ] meant she was going to lose in the trial court, *lose on appeal,* and have to seek relief in Austin." (Emphasis added). Thus, Owen admits he knew he had no grounds on which to seek a reversal of the trial court's decision. *See Smith,* 51 S.W.3d at 381.

As our sister court has stated:

> We will not permit spurious appeals, which unnecessarily burden parties and our already crowded docket, to go unpunished. Such appeals take the court's attention from appeals filed in good faith, wasting court time that could and should be devoted to those appeals. No litigant has the right to put a party to needless burden and expense or to waste a court's time that would otherwise be spent on the sacred task of adjudicating the valid disputes of Texas citizens.

*Bradt v. West,* 892 S.W.2d 56, 79 (Tex. App.-Houston [1st Dist.] 1994, pet. denied) (citations omitted).

Therefore, from the record and briefs filed with this Court, we conclude Owen's appeal is objectively frivolous. *See Smith,* 51 S.W.3d at 381. The trial court, in its order, conditionally awarded RW $7,500 for an unsuccessful appeal to this Court. RW provided this Court with an affidavit by its appellate counsel, testifying that he "believe[s] the fees incurred and to be incurred by [RW] through oral argument will total $12,000.00 and are reasonable and necessary for the representation of Appellee in this appeal." RW seeks the aforementioned $12,000.00 in addition to the $7,500.00 in conditional appellate fees awarded below. However, based upon the affidavit of counsel and the entire record before us, we conclude a total award of $7,500 for frivolous appeal damages to be a just and reasonable amount. *See id.* We sustain RW's cross-point. *See* TEX. R. APP. P. 45; *Smith,* 51 S.W.3d at 381.

### CONCLUSION

Having overruled all of Owen's issues on appeal and having sustained RW's sole issue, we affirm the judgment of the trial court.