**AFFIRMED and Opinion Filed April 13, 2022**



In The

### Court of Appeals
### Fifth District of Texas at Dallas

**No. 05-21-00823-CV**

**THE CITY OF CELINA, TEXAS, Appellant**
**V.**
**SHEA SCOTT, Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-18195**

## MEMORANDUM OPINION

Before Justices Carlyle, Smith, and Garcia
Opinion by Justice Smith

Appellee Shea Scott sued the City of Celina under the Texas Whistleblower

Act (the Act) after the City terminated him. The City filed a plea to the jurisdiction,

which the trial court denied. In three issues, the City argues Scott failed to invoke

the protections of the Act because he did not make a report to an appropriate law

enforcement authority. We disagree with the City's interpretation of the Act and

cited case law. We affirm the trial court's order denying the City's plea to the

jurisdiction. We deny Scott's request to sanction the City for filing a frivolous

appeal.

**Background**

The following facts are from Scott's original and amended petitions. Scott was the City's assistant chief of police. On June 8, 2020, Scott received emails from Sam Jeter, the husband of Jennifer Jeter, who was the City's human resources director. The emails indicated that Jennifer committed criminal family violence by pointing a loaded gun at Sam and possessed illegal drugs and drug paraphernalia.

Because Scott received information about criminal conduct, he in good faith believed the law required him to report the allegations to a law enforcement agency. After Scott drafted a criminal complaint, he gave it to Detective Jeremiah Phillips in the Criminal Investigation Division (CID) and instructed Phillips to file it with the proper law enforcement agency. At that time, Scott was unsure where the Jeters lived. Phillips determined they lived in Denton County and subsequently filed the criminal complaint with the Denton County Sheriff's Office. Scott also filed an internal complaint with the police chief regarding Jennifer's conduct.

The City hired outside counsel to investigate the allegations against Jennifer. After the City discovered false information on her resume, Jennifer resigned on July 2, 2020. Outside counsel then continued to investigate the police department, the police chief, and Scott.

According to Scott, the city manager told him not to investigate "my directors" and that Scott should have violated the law and kept the allegations against Jennifer a secret instead of reporting them. The city manager expressly prohibited

Scott or other members of the police department from reporting misconduct by any City employee at the director level or above without the city manager's approval.

On August 3, 2020, the City hired an interim police chief. On August 12, 2020, the City placed Scott on administrative leave and demanded resignation or face termination. The City did not identify any violation or justification for the decision. Scott refused a severance offer and requested reinstatement. Instead of reinstatement, the interim police chief drafted a list of grievances against Scott allegedly based on audits performed by an independent auditor and the human resources department. Scott was never provided copies of these audits. Scott responded to the grievances and stated the real reason for the grievances was retaliation for reporting Jennifer's alleged criminal conduct.

On October 5, 2020, Scott received written notice of his termination. He timely appealed his termination, participated in a hearing, but did not receive a decision.

Scott subsequently filed suit under the Act. He believed he was wrongfully terminated because he in good faith reported a violation of law by another public employee to an appropriate law enforcement authority. Scott attached to his petition the emails from Sam, and a copy of his "FORMAL COMPLAINT," dated June 9, 2020, to the city manager, the police chief, and the city attorney. Scott stated he was making the complaint "as I have exhausted all options to remedy the situation within

my chain of command." His complaint described the drugs and drug paraphernalia at Jeters' home, along with details about Jennifer pointing a loaded gun at Sam.

The City filed its answer and plea to the jurisdiction on January 13, 2021. The City alleged Scott failed to sufficiently plead facts to waive the City's immunity. The City argued Scott's petition "affirmatively demonstrates [he] did not make a good faith report to an appropriate law enforcement agency." The City asserted Scott's actions were insufficient to invoke the Act because Scott made an internal complaint with the City and instructed a subordinate officer to file a criminal complaint with an unspecified law enforcement agency. Scott subsequently amended his petition, elaborated on his two written reports, and added a third oral report.

In the amended petition, Scott explained Phillips was his subordinate. It was within Scott's authority to delegate tasks, such as determining the proper jurisdiction for filing criminal complaints. If after receiving a criminal complaint Phillips determined the proper authority was another police department, it was within Phillips' normal scope and authority to forward the complaint to the proper law enforcement authority. Within forty-eight hours, Phillips determined the Jeters lived in Denton County, and he forwarded Scott's written report to the Denton County Sheriff's Office.

After the Denton County Sheriff's Office received the report, a detective in the office contacted Scott. Scott then provided an oral report of the alleged criminal

conduct, including the source of the allegations and other related information. The City did not amend its plea to the jurisdiction to address this third oral report.

Scott filed a response to the City's plea to the jurisdiction and sought sanctions under rule 13. After a hearing, the trial court denied the City's plea to the jurisdiction. The trial court stated in the order that Scott's oral discussion with the Denton County Sheriff's Office detective and his written reports to Phillips and the City's police chief satisfied "the Texas Whistleblower Act's requirement for a report to an appropriate law enforcement agency." The court denied Scott's rule 13 motion for sanctions. This appeal followed.

**Standard of Review**

A plea to the jurisdiction challenges the court's authority to decide a case. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 149 (Tex. 2012). We review a plea questioning the trial court's subject matter jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We focus on the plaintiff's petition to determine whether the pleaded facts affirmatively demonstrate that subject matter jurisdiction exists. *Id*. We construe the pleadings liberally in favor of the plaintiff. *Id*.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id*. at 227; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). When evidence is submitted that implicates the merits of the

case, our standard of review generally mirrors the summary judgment standard under Texas Rule of Civil Procedure 166a(c). *Miranda*, 133 S.W.3d at 228; *see* TEX. R. CIV. P. 166a(c). The burden is on the governmental unit to present evidence to support its plea. *Miranda*, 133 S.W.3d at 228. If the governmental unit meets this burden, the burden shifts to the plaintiff to show that a disputed material fact exists regarding the jurisdictional issue. *Id*. We take as true all evidence favorable to the plaintiff and indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Id*. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact question will be resolved by the fact-finder. *Id*. at 227–28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id*. at 228.

Generally, governmental entities are immune from suit and liability under the doctrine of sovereign immunity. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009). Sovereign immunity from suit deprives a court of subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Miranda*, 133 S.W.3d at 225–26. The Act, however, waives immunity from suit to the extent a governmental entity is liable under its provisions. *See* TEX. GOV'T CODE ANN. § 554.0035.

**Discussion**

In three issues, the City argues Scott's two internal reports within the Celina police department and his phone call with the Denton County Sheriff's Office do not qualify as reports to an "appropriate law enforcement agency" to satisfy section 554.002(b) of the government code. *See* TEX. GOV'T CODE ANN. § 554.002(b). Scott responds that the City relies on inapplicable case law and ignores a plain reading of the statute that supports the trial court's denial of the City's plea to the jurisdiction.

The standard for a violation of the Act appears in section 554.002(a). *Id.* § 554.002(a); *Lueck,* 290 S.W.3d at 881. The elements of a Whistleblower claim are jurisdictional and may not be waived. *Univ. of Houston. v. Barth*, 403 S.W.3d 851, 854 (Tex. 2013) (per curiam). Under the Act, a plaintiff is required to prove:

> (1) that he was a public employee, (2) that he reported a violation of law in good faith, (3) that the violation of law reported was committed by his employing governmental entity or another public employee, (4) that the report was made to an appropriate law enforcement authority, and (5) that his employing governmental entity took an adverse personnel action against him because of the report.

*Tex. Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842, 849 (Tex. App.—Austin 2007, pet. denied); *see* TEX. GOV'T CODE ANN. § 554.002(a).

The City only challenges whether Scott's reports were made to an appropriate law enforcement authority. Section 554.002(b) defines "appropriate law enforcement authority" as follows:

> [A] report is made to an appropriate law enforcement authority if the authority is part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law.

TEX. GOV'T CODE ANN. § 554.002(b). An employee's belief is in good faith if: (1) the employee believed the governmental entity was qualified, and (2) the employee's belief was reasonable in light of the employee's training and experience. *Tex. Dep't of Human Servs. v. Okoli*, 440 S.W.3d 611, 614 (Tex. 2014).

To support its position, the City relies on a line of Texas Supreme Court cases holding that internal reports to another governmental employee, even if that employee is a supervisor tasked with ensuring internal compliance, are not reports to an appropriate law enforcement authority.[1] The City argues Scott's reports within the City's police department were insufficient to trigger the Act's protections.

None of the supreme court cases the City cites involved a police officer reporting a criminal act. Rather, the cases involved internal reports to individuals within the governmental entity whom the court determined did not possess outward-

---

[1] *See, e.g.*, *Ysleta Indep. Sch. Dist. v. Franco*, 417 S.W.3d 443, 445–46 (Tex. 2013) (per curiam) (in the school context, reporting to school officials not charged with enforcing laws outside the district falls short of what the Act requires); *Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 655 (Tex. 2013) (per curiam) (same); *Univ. of Houston v. Barth*, 403 S.W.3d 851, 855–58 (Tex. 2013) (per curiam) (holding that none of the four people Barth reported alleged violations of the penal code—the university's general counsel, CFO, internal auditor, and associate provost—could have investigated or prosecuted criminal law violations against third parties outside the university); *Tex. A & M Univ.–Kingsville v. Moreno*, 399 S.W.3d 128, 130 (Tex. 2013) (per curiam) (holding evidence by an employee at state university showing she reported an alleged violation of law to an authority that only oversaw internal university compliance was jurisdictionally insufficient under the Act); *Gentilello*, 398 S.W.3d at 689 (medical school faculty member overseeing federal compliance regulations did not have "law enforcement status" for reports of federal law violations); *Lueck*, 290 S.W.3d at 885–86.

looking enforcement or regulatory powers. *See, e.g., Gentilello*, 398 S.W.3d at 686, 689 ("[F]or an entity to constitute an appropriate law-enforcement authority under the Act, it must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or it must have authority to promulgate regulations governing the conduct of such third parties.").

To the extent the City argues internal complaints are insufficient, the supreme court has twice rejected the conclusion that a report under the Act "can *never* be made internally." *Id*. at 686 (emphasis in original); *Okoli*, 440 S.W.3d at 616–17. In fact, the supreme court has provided the following hypothetical involving a police officer:

> A police department employee could retain the protections of the Whistleblower Act if she reported that her partner is dealing narcotics to her supervisor in the narcotics or internal affairs division. In such a situation, the employee works for an entity with authority to investigate violations of drug laws committed by the citizenry at large.

*See Okoli*, 440 S.W.3d at 611; *Gentilello*, 398 S.W.3d at 686. The *Okoli* court further recognized that the whistleblower in the hypothetical was reporting a violation of law to a police officer, and "a police officer is authorized to investigate violations of law and to cite or arrest persons suspected of committing such violations.*" Okoli*, 440 S.W.3d at 611.

Scott's reports to Phillips and the police chief regarding Jeter's alleged criminal violations are the types of internal reports that fall within the supreme court's hypothetical. Scott made reports to individuals who were "part of a

governmental arm or entity authorized to conduct criminal law investigations." *See Okoli*, 440 S.W.3d at 617. The Celina police department, as a governmental arm or entity, had "outward-looking powers" and authority to enforce and investigate violations of the Texas Penal Code. *See, e.g.*, *Raymondville Indep. Sch. Dist. v. Ruiz*, No. 13-19-00597-CV, 2021 WL 822699, at *3 (Tex. App.—Corpus Christi-Edinburg Mar. 4, 2021, pet. denied) (mem. op.) (affirming denial of school district's plea to the jurisdiction when school district truancy officer reported criminal violation to police chief, as his immediate supervisor, and RISD police department had authority to investigate such violations). Thus, Scott pleaded sufficient facts establishing that he in good faith filed two internal reports with appropriate law enforcement authorities.

In reaching this conclusion, we reject the City's argument that section 554.002(b)(2) has a geographical requirement limiting an officer's ability to investigate or prosecute criminal law violations. The City asserts that even if the statute allowed Scott to make an internal report, his reports were still not made to an "appropriate law enforcement authority" because the Celina police department did not have jurisdiction to investigate alleged criminal violations by a city employee that occurred outside its jurisdiction. The City, however, admits there are no cases holding that geography is relevant under the Act, but instead cites two cases "which clearly assume that is the case." We are unpersuaded by the City's assumptions.

–10–

In *Tharling v. City of Port Lavaca*, 329 F.3d 422 (5th Cir. 2003), a federal case not binding on this Court, the Fifth Circuit concluded an officer was entitled to protection under the Act because he reported an alleged criminal violation to the Texas City police department, the police department "charged with enforcing the law in Texas City, where the violation occurred." *Id*. at 430. The City emphasizes the "where the violation occurred" language; however, the court's holding was not dependent on this fact and is dicta. Similarly, we reject the City's reliance on *Connally v. Dallas Independent School District*, 506 S.W.3d 767, 783 (Tex. App.— El Paso 2016, no pet.) (acknowledging there was no dispute between the parties that the DISD police department had authority to investigate penal code violations occurring within its jurisdiction involving DISD employees or third parties).

A plain reading of the statute requires a person to make a report to an entity "authorized to investigate or prosecute *a* violation of criminal law." TEX. GOV'T CODE ANN. § 554.002(b)(2) (emphasis added). It does not require that the entity or agency has authority to investigate or prosecute *the* violation at issue. The legislature did, however, include such a limitation in subsection (b)(1), which requires a person to make a report to an entity "authorized to regulate under or enforce *the* law alleged to be violated in *the* report." *Id*. § 554.002(b)(1) (emphasis added).

We endeavor to read statutes contextually to give effect to every word, clause, and sentence. *See In re Office of Attorney Gen*., 422 S.W.3d 623, 629 (Tex. 2013).

–11–

We presume the legislature included each word in the statute for a purpose, and words not included were purposefully omitted. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017). The statutory text is clear. Had the legislature intended to require a person to make a report to an entity authorized to investigate or prosecute *the* violation of criminal law *alleged to be violated in the report*, it could have added such language to (b)(2). Because it did not, we decline the City's invitation to read language into the statute. We conclude Scott satisfied section 554.002(b)(2) as to his reports to Detective Phillips and the police chief. Accordingly, where Jeter lived and where the crimes allegedly occurred is not relevant to triggering the Act's protection under section 554.002(b)(2). We overrule the City's first and second issues.

In its third issue, the City argues Scott's conversation with the Denton County Sheriff's Department is not entitled to protection because the Sheriff's Department initiated the phone call to discuss Scott's written report, which had been forwarded to the office. The City provides no authority for its propositions that section 554.002(b) does not apply if an entity reaches out to a party to discuss a report or that section 554.002(b) does not apply to any further statements a plaintiff makes once an investigation under the Act begins.

If a report satisfies section 554.002(b)(1) or (2), then the Act applies to the report. The plain language of the statute does not limit "report" to only the first report starting the investigation or prohibit protection under the Act to subsequent

–12–

oral statements an employee makes to an entity. To the contrary, there is case law in which the court analyzed multiple reports when determining if any were provided to "appropriate law enforcement authorities." *See, e.g.*, *Connally*, 506 S.W.3d at 783 (analyzing numerous reports filed to various DISD departments to determine whether they were appropriate law enforcement authorities under the Act); *see also Barth*, 403 S.W.3d at 857–58 (concluding reports to general counsel, CFO, internal auditor, and associate provost were not reports to an appropriate law enforcement authority). Further, oral statements qualify as reports under the Act. *See Connally*, 506 S.W.3d at 784 (noting Act does not require a "formal" report and considering whether statements made in conversations provided sufficient information to support conclusion that DISD personal engaged in criminal activity); *see also City of Donna v. Ramirez*, 548 S.W.3d 26, 33, 39 (Tex. App.—Corpus Christi-Edinburgh 2017, pet. denied) (considering whether Act applied to alleged violations of law reported orally to police chief and municipal judge).

Here, a detective with the Denton County Sheriff's Office contacted Scott based on Scott's original report that Phillips forwarded to the office. Scott then provided an oral report via telephone of Jeter's alleged criminal conduct, including the source of the allegations and other related information. The Denton County Sheriff's Office was an "appropriate law enforcement authority" because the office was part of a local government entity investigating a violation of criminal law. *See*

–13–

TEX. GOV'T CODE ANN. § 544.002(b)(2). The trial court did not err by denying the City's plea to the jurisdiction on this basis. We overrule the City's third issue.

**Rule 45 Motion for Sanctions**

Scott has requested we sanction the City pursuant to rule of appellate procedure 45 for bringing a frivolous appeal because the City ignores clear statutory language, ignores language of the cases it relies upon, relies upon a ground not properly preserved, and uses its appeal for needless delay. Rule 45 permits an award of just damages to the prevailing party of an appeal when the court determines the appeal is frivolous. *See* TEX. R. APP. P. 45.

"An appeal is frivolous when the record, viewed from the perspective of the advocate, does not provide reasonable grounds for the advocate to believe that the case could be reversed." *See Owen v. Jim Allee Imports, Inc.*, 380 S.W.3d 276, 290 (Tex. App.—Dallas 2012, no pet.). Our decision to grant appellate sanctions is a matter of discretion that we exercise with caution, careful deliberation, and only in truly egregious circumstances. *Id.* Moreover, rule 45 does not require that we award damages in every frivolous appeal. *See Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC*, No. 05-17-01423-CV, 2018 WL 6599180, at *2 (Tex. App.—Dallas Dec. 17, 2018, no pet.) (mem. op.).

After reviewing the record and briefing filed in this Court, we conclude this appeal does not present the type of egregious circumstances warranting the

imposition of sanctions.  Accordingly, we deny Scott's request for damages under rule 45.

## Conclusion

The trial court's order denying the City's plea to the jurisdiction is affirmed.

/Craig Smith/
CRAIG SMITH
JUSTICE

210823F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THE CITY OF CELINA, TEXAS,
Appellant

No. 05-21-00823-CV      V.

SHEA SCOTT, Appellee

On Appeal from the 44th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-18195.
Opinion delivered by Justice Smith.
Justices Carlyle and Garcia
participating.

In accordance with this Court's opinion of this date, the order denying appellant The City of Celina's plea to the jurisdiction is **AFFIRMED**.

It is **ORDERED** that appellee SHEA SCOTT recover his costs of this appeal from appellant THE CITY OF CELINA, TEXAS.

Judgment entered April 13, 2022.