**REVERSE and REMAND and Opinion Filed August 12, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00327-CV**

**IN THE INTEREST OF G.L.W., A CHILD**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-57087-2018**

## MEMORANDUM OPINION

Before Justices Smith, Miskel, and Breedlove
Opinion by Justice Breedlove

This is an appeal of a final decree of divorce. In four issues, appellant Taylor Marie Workman ("Wife") asserts that the trial court erred in entering the final decree of divorce when the decree: (1) provided for the post-judgment appointment of an amicus attorney; (2) was based on a revocable settlement agreement that had been revoked; (3) contained additional terms that conflicted with the agreement; and (4) was based upon an arbitration award rendered by an arbitrator who exceeded her authority. Concluding that the trial court erred by rendering judgment that included appointment of an ongoing amicus attorney, we reverse the judgment and remand the case to the trial court.

## BACKGROUND

On December 7, 2018, Wife filed an Original Petition for Divorce, and Appellee Brandon Carlin Workman ("Husband") filed his Original Counterpetition for Divorce two weeks later. The divorce and custody issues were heavily litigated for four years.

On August 3, 2022, the parties participated in a mediation with mediator Laura Roach. The parties did not reach a settlement agreement at mediation, but the mediator, the court-appointed amicus attorney Lynne Corsi, and the parties' attorneys continued to discuss settlement from August 5 through August 9. After August 9, Corsi and the parties' attorneys continued to discuss settlement, but Roach was no longer involved in the negotiations.

Trial was set to begin on August 15, 2022. Late in the evening of August 14, the attorneys reached a settlement agreement, including significant revisions to the previous versions of proposed settlement agreements. The parties signed a document containing that agreement early the following morning, and the written agreement was filed with the trial court shortly after. That agreement, entitled the "Partial Mediated Settlement Agreement for SAPCR Issues Only," reserved for future determination all other claims regarding the divorce, including property division, and provided that all unsettled disputes would be submitted to arbitration before Roach.

After the parties had signed the partial MSA, wife's attorney noticed that the MSA inadvertently left out details regarding child possession during spring break and asked Roach to revise it to include those terms. It appears based on the record that Roach never did this, as the partial MSA that was filed in the trial court is the parties' signed version with the spring break possession details omitted.

On September 16, 2022, the parties participated in arbitration before Roach to resolve disagreements about the property division. On October 17, 2022, Roach issued her arbitration decision and award on property division only. Husband's attorney drafted a proposed version of a Final Decree of Divorce and circulated it to Wife's attorney, but when the parties could not agree on the form of the Decree, Husband ultimately invoked Roach's authority to arbitrate drafting disputes. On November 21, 2022, Roach sent the parties a signed final decree addressing all issues and, as the parties had agreed, included a provision to retain Corsi as an amicus attorney with duties extending post-judgment.

On December 13, 2022, Husband filed a Motion to Enter Final Decree of Divorce attaching the signed but unedited version of the partial MSA. The following day, Wife filed a notice revoking consent to the August agreement on SAPCR issues, alleging that it did not comport with the statutory requirements for a mediated settlement agreement. Wife then filed objections to Husband's proposed final decree of divorce and a trial brief on the appointment of an amicus attorney post-judgment. The trial court held a hearing on January 9, 2023, overruled Wife's objections, and

signed Husband's proposed order. On February 8, 2023, Wife filed a motion for new trial, and argued that, in the alternative, the court should modify the judgment. She also moved the court to vacate the arbitration award. This appeal followed.

**ISSUES AND STANDARDS OF REVIEW**

Wife presents four issues on appeal, each of them challenging the trial court's entry of the divorce decree. Specifically, Wife argues that the trial court erred by entering a decree that: (1) provided for the continued, post-judgment appointment of an amicus attorney; (2) was based on a revocable settlement agreement after Wife revoked her consent to that agreement; (3) contained terms additional to that agreement and that conflicted with that agreement; and (4) was based on an arbitration award rendered by an arbitrator who exceeded her authority to decide drafting disputes.

We review a trial court's judgment on a mediated settlement agreement for an abuse of discretion. *R.H. v. Smith*, 339 S.W.3d 756, 765 (Tex. App.—Dallas 2011, no pet.). A final judgment rendered pursuant to a mediated settlement agreement must be in strict or literal compliance with that agreement. *Id.* "[A] judgment will not be reversed unless it adds terms, significantly alters the original terms, or undermines the intent of the parties." *Id.* (internal quotation and citation omitted). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles. *Sink v. Sink*, 364 S.W.3d

–4–

340, 343 (Tex. App.—Dallas 2012, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

**DISCUSSION**

**Issue 1: Appointment of a Post-Judgment Amicus Attorney**

We first address Wife's contention that the trial court erred by entering a divorce decree appointing Corsi as a post-judgment amicus attorney. Wife argues that the settlement agreement erroneously purports to authorize the trial court to enter an order appointing Corsi to act as amicus attorney post-judgment by delegating ongoing duties in the case to an agent of the court as well as provide Corsi with authority extending beyond those powers granted to an amicus attorney under the family code.

Husband responds that the issue was not preserved. Alternatively, he argues that Corsi's ongoing duties derive from an agreement by both Husband and Wife and not from Corsi's service as amicus attorney. He contends that because Corsi's appointment was a result of Roach's arbitration award, the trial court lacked the discretion to omit those terms.

**A. Preservation**

Because a reviewing court should not address the merits of an issue that has not been preserved for appeal, before addressing the merits, we consider whether Wife preserved her first issue for appellate review. For Wife to preserve this issue

for appellate review, the record must show she made her complaint to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1(a)(1).

Husband argues that because Wife did not argue to the trial court or on appeal that the arbitration award, including Corsi's appointment, was not in the best interest of the child, she waived the issue. He asserts that in order to preserve her complaint, she needed to request a best-interest hearing and prove the award was not in the child's best interest. In support of his argument, he relies on *In the Interest of T.B.H.-H.*, 188 S.W.3d 312, 314 (Tex. App.—Waco 2006, no pet.) (holding that failing to file a motion to vacate the award and failing to present evidence concerning the child's best interest constituted waiver of the right to a best interest hearing and, as a result, the waiver of the appellant's argument for vacating the award).

Husband's argument is undercut by his own statement of the facts wherein he recites that arbitration took place after the parties entered into the agreement on SAPCR issues and that the arbitration addressed only the remaining "principally property-related" issues. Further, the "Arbitration Decision and Award" includes only decisions related to "property division." It does not address any of the SAPCR issues included in the previously-signed agreement, including Corsi's appointment.[1]

---

[1] Husband's argument based on family code § 153.0071(b) that the trial court had no authority to refuse to enter a decree that reflected Corsi's appointment is similarly unavailing. Section 153.0071(b) requires a court to render an order reflecting the arbitrator's award, and here, the arbitrator's award contained no mention of Corsi's appointment. *See* TEX. FAM. CODE ANN. § 153.0071(b) ("If the parties agree to binding arbitration, the court shall render an order *reflecting the arbitrator's award* unless the court determines at a non-jury hearing that the award is not in the best interest of the child") (emphasis added).

Therefore, the preservation requirement of requesting a best-interest hearing to challenge the arbitration award is irrelevant to the issue of Corsi's appointment.

Wife preserved her argument challenging Corsi's appointment under the partial MSA by (1) filing a notice of revocation of consent with the trial court challenging the statutory compliance of the partial MSA; (2) filing objections to the proposed final decree of divorce along with a trial brief on the appointment of an amicus attorney post-judgment; (3) appearing at the hearing on Husband's motion to enter the final divorce decree and arguing that the partial MSA should be set aside; and (4) filing a motion for new trial that included a motion to modify the judgment and vacate the arbitration award. All of these actions put the trial court on notice of Wife's objections to Corsi's appointment and comport with her issue on appeal. We conclude that Wife properly preserved her complaint. *See* TEX. R. APP. P. 33.1(a)(1).

## B. The Role of an Amicus Attorney

The Family Code defines an "amicus attorney" as "an attorney appointed by the court in a suit, other than a suit filed by a governmental entity, whose role is to provide legal services necessary to assist the court in protecting a child's best interests rather than to provide legal services to the child." TEX. FAM. CODE ANN. § 107.001(1); *Zeifman v. Nowlin*, 322 S.W.3d 804, 808–09 (Tex. App.—Austin 2010, no pet.).

The Family Code describes the duties of an amicus attorney. *See* TEX. FAM. CODE ANN. §§ 107.003, 107.005. An amicus attorney

(1) shall:

    (A)    subject to Rules 4.02, 4.03, and 4.04, Texas Disciplinary Rules of Professional Conduct, and within reasonable time after the appointment, interview:

        (i)    the child in a developmentally appropriate manner, if the child is four years of age or older;

        (ii)    each person who has significant knowledge of the child's history and condition, including any foster parent of the child; and

        (iii)    the parties to the suit;

    (B)    seek to elicit in a developmentally appropriate manner the child's expressed objectives of representation;

    (C)    consider the impact of the child in formulating the attorney's presentation of the child's expressed objectives of representation to the court;

    (D)    investigate the facts of the case to the extent the attorney considers appropriate;

    (E)    obtain and review copies of relevant records relating to the child as provided by Section 107.006;

    (F)    participate in the conduct of the litigation to the same extent as an attorney for a party;

    (G)    take any action consistent with the child's interest that the attorney considers necessary to expedite the proceedings;

    (H)    encourage settlement and the use of alternative forms of dispute resolution; and

    (I)    review and sign, or decline to sign, a proposed or agreed order affecting the child;

(2)   must be trained in child advocacy or have experience determined by the court to be equivalent to that training; and

(3)   is entitled to:

    (A)   request clarification from the court if the role of the attorney is ambiguous;

    (B)   request a hearing or trial on the merits;

    (C)   consent or refuse to consent to an interview of the child by another attorney;
    . . . .

TEX. FAM. CODE ANN. § 107.003(a). Section 107.005 outlines additional duties of

the amicus attorney:

(a)   Subject to any specific limitation in the order of appointment, an amicus attorney shall advocate the best interests of the child after reviewing the facts and circumstances of the case. Notwithstanding Subsection (b), in determining the best interests of the child, an amicus attorney is not bound by the child's expressed objectives of representation.

(b)   An amicus attorney shall, in a developmentally appropriate manner:

    (1) with the consent of the child, ensure that the child's expressed objectives of representation are made known to the court;

    (2) explain the role of the amicus attorney to the child;

    (3) inform the child that the amicus attorney may use information that the child provides in providing assistance to the court; and

    (4) become familiar with the American Bar Association's standards of practice for attorneys who represent children in custody cases.

(c)   An amicus attorney may not disclose confidential communications between the amicus attorney and the child

unless the amicus attorney determines that disclosure is necessary to assist the court regarding the best interests of the child.

TEX. FAM. CODE ANN. § 107.005.

An amicus attorney appointed under Chapter 107 of the family code does not represent the child or either parent but is instead appointed to specifically assist the court. *See* TEX. FAM. CODE ANN. § 107.001(1); *In re McDaniel*, 408 S.W.3d 389, 399 n.2 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding) ("[T]he amicus attorney's role is limited by statute to assisting the trial court with protecting the best interests of the child."); *Zeifman*, 322 S.W.3d at 808–09; *O'Connor v. O'Connor*, 245 S.W.3d 511, 515 (Tex. App.—Houston [1st Dist.] 2007, no pet).

## C. Corsi's Role Under the Parties' MSA

Under the MSA, the parties named Corsi as an amicus attorney with the intention that her role would extend beyond the final decree in this case. It is clear from the MSA that the parties intended for Corsi's involvement to go beyond the parameters of the amicus attorney role as set forth in the Family Code. *See* TEX. FAM. CODE ANN. §§ 107.003(a); 107.005. Husband provides no legal authority, and indeed we can find none, authorizing an amicus attorney's authority to be expanded in such a way.

Although this Court has never addressed the scope or limitations of an amicus's attorney's powers under the Family Code, other courts that have addressed the issue conclude that an amicus attorney's role is limited to those powers and duties

expressly authorized by the Family Code. *See In re Collins*, 242 S.W.3d 837, 847–48 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (orig. proceeding).

In *In re Collins*, Russell Craig Collins sought a writ of mandamus compelling the trial court to, among other things, strike a portion of the trial court's order granting an amicus attorney the authority to act as next friend to Collins's minor daughter. *In re Collins*, 242 S.W.3d at 837. In that case, the trial court ordered the amicus attorney "to provide legal services necessary to assist the Court in protecting the best interests of [the minor child]." *Id.* at 839. The trial court later ordered that "[a]ll parties are ordered to cease personal injury lawsuits on behalf of the child[,] and [amicus attorney], not the grandparents or the father[,] will have the sole right to make legal decisions on behalf of the child. . . ." *Id.* at 840. As a result, the amicus attorney retained another attorney to file a personal injury suit on behalf of the child. *Id.*

As relevant here, Collins argued that the trial court was not authorized to appoint the amicus attorney to act as the child's next friend, to hire counsel for her, or to be paid for work in other litigation in which she was a party, because those rights and duties exceeded those authorized by the Family Code. *Id.* at 844 (citing TEX. FAM. CODE ANN. § 107.001(1); *O'Connor*, 245 S.W.3d at 516). The court concluded that the trial court's powers to make discretionary appointments as addressed in § 107.021 of the Family Code did not allow the trial court to confer on

–11–

the amicus attorney the powers included in the court's orders and that it was an abuse of discretion for the court to have done so. *Id.* at 845–46.

In addition to analyzing the scope of the trial court's authority to assign duties and powers to the amicus attorney, our sister court also considered the scope of the amicus attorney's role in light of family code § 107.003(1)(G), which gives the amicus attorney the power to "take any action consistent with the child's interests that the attorney considers necessary to expedite the proceedings." *Id.* at 846. The grandparents in *Collins* argued that § 107.003(1)(G) inherently provided the amicus attorney the authority to act as next friend and pursue a personal injury case on the child's behalf because it would "expedite the proceedings." *Id.* The court of appeals concluded that "the statute does not authorize an amicus attorney to expedite a SAPCR by using powers not conferred by statute, and the statute does not purport to expand the amicus attorney's powers" in the ways contemplated by the trial court's order. *Id.* at 847 (citing TEX. FAM. CODE ANN. §§ 107.003; 107.005).

The court in *Collins* rejected the grandparents' argument that the trial court had inherent authority to confer powers on the amicus attorney. *Id.* The court explained that "[t]he inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity." *Id.* at 847–48 (quoting *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979)). The court concluded that none of those purposes was served by appointing the amicus attorney as next friend and

allowing him to hire counsel and collect fees connected with various wrongful death suits. *Id.* at 848. Concluding that the trial court could not use the amicus attorney to extend its own jurisdiction beyond the SAPCR, the court of appeals held that "[t]he trial court lacked the power to retain counsel to represent [the child] in a different suit and could not accomplish the same ends through an amicus attorney." *Id.* (citing *Thomas v. Anderson*, 861 S.W.2d 58, 61 (Tex. App.—El Paso 1993, no writ)).

We agree with the Fourteenth Court of Appeals' interpretation of the limits of the amicus attorney's powers under the family code and the corresponding limits of a trial court's authority to extend its own powers to allow ongoing involvement in cases or controversies outside of the SAPCR by using an amicus attorney as its agent. Therefore, we hold that an amicus attorney's powers are limited to those expressly granted to her by statute, and a trial court abuses its discretion when its orders purport to extend those powers beyond those included in §§ 107.003 and 107.005. *See id.*

While we acknowledge that "[a] statutorily compliant Mediated Settlement Agreement is binding on both the parties and the trial court, subject to a few narrow exceptions," *see Highsmith v. Highsmith*, 587 S.W.3d 771, 775 and n.3 (Tex. 2019) (per curiam), the MSA in this case is not statutorily compliant. Here, Corsi's post-judgment duties as reflected in the parties' MSA and effectuated in the trial court's final divorce decree extend well beyond those expressly granted by statute. Because the partial MSA is not statutorily compliant, the portions of the final divorce decree

–13–

and the partial MSA upon which it is based, appointing Corsi as amicus attorney post-judgment are void. *See In re Collins*, 242 S.W.3d at 848.[2]

## D. Determining the Parties' Intent

We must next consider whether we may sever the portions of the divorce decree that are based on the sections of the MSA involving Corsi's post-judgment appointment and duties and affirm the remainder of the decree or, instead, whether the void provisions render the partial MSA, and thus the divorce decree, unenforceable.

As a general rule, where part of the consideration for an agreement is illegal or against public policy, the entire agreement is void if the contract is indivisible. *See Montgomery v. Browder*, 930 S.W.2d 772, 778 (Tex. App.—Amarillo 1996, writ denied). The doctrine of severability is an exception that applies in circumstances in which the original consideration for the contract is legal, but incidental promises within the contract are found to be illegal. *See id.* In such a case, the court may sever the invalid provision and uphold the valid portion, provided the invalid provision

---

[2] Husband also appears to argue that the amicus attorney provisions should be upheld despite their statutory infirmity because everyone involved agreed to Corsi's role and because Wife has not identified any harm to herself or the child by Corsi's extra-statutory powers. Husband provides no legal authority to support either of these arguments and has waived them for inadequate briefing. *See* TEX. R. APP. P. 38.1. Further, to the extent that Husband's briefing can be construed as arguing that the term "amicus attorney" is irrelevant and that the duties assigned to Corsi were not those of an amicus attorney, we find this argument similarly unavailing. Although the Family Code does contemplate the appointment of other professionals, such as a parenting facilitator or parenting coordinator, to assist with ongoing dispute resolution, those roles are also more limited than the scope of the duties provided to Corsi and have additional requirements and restrictions imposed upon them that were not followed here. *See* TEX. FAM. CODE ANN. §§ 153.601–153.610.

does not constitute the main or essential purpose of the agreement. *See Rogers v. Wolfson*, 763 S.W.2d 922, 925 (Tex. App.—Dallas 1989, writ denied). Severability of the contract is determined by the intent of the parties as evidenced by the language in the contract. *See Montgomery*, 930 S.W.2d at 778–79; *see also McFarland v. Haby*, 589 S.W.2d 521, 524 (Tex. App.—Austin 1979, writ ref'd n.r.e.). The issue is whether the parties would have entered into the agreement absent the illegal parts. *See Rogers*, 763 S.W.2d at 925; *see also McFarland*, 589 S.W.2d at 524; *In re Kasschau*, 11 S.W.3d 305, 313 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Both parties acknowledge that the child-related issues addressed in the partial MSA were hotly contested. The custody issues in this case were heavily litigated for four years, and negotiations continued after mediation before a deal was struck, which was on the eve of trial. Because the terms of the MSA are a product of confidential mediation negotiations, the parties' intent when agreeing to the terms, including those terms we have concluded were void, is cloaked in the secrecy of the mediation process. *See* CIV. PRAC. & REM. CODE ANN. § 154.073(a).

As we recently stated in our memorandum opinion in *Chintam v. Chintam*, "[m]ediation is a valuable dispute resolution tool that works because parties approach the process with confidence that their interactions and communications will remain confidential." *Chintam v. Chintam*, No. 05-22-00022-CV, 2023 WL 5345829, at *5 (Tex. App.—Dallas, Aug. 21, 2023, no pet.) (mem. op.). Here, the trial court would be required to hear evidence to determine the parties' intent and

whether the portions of the MSA appointing Corsi were "incidental promises" or part of the "main or essential purpose of the agreement." *See Montgomery*, 930 S.W.2d at 778; *Rogers*, 763 S.W.2d at 925. Testimony on these subjects, however, is prohibited under § 154.073(a) of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 154.073(a) (providing that "a communication relating to the subject matter of any. . . dispute made by a participant in an alternative dispute resolution procedure. . . is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding"); *see also Chintam*, 2023 WL 5345829, at *5.

The prohibition on the disclosure of communications relating to mediation is not absolute; exceptions do exist to allow that secrecy to be breached. *See Chintam*, 2023 WL 5345829, at *5 (holding that the trial court did not abuse its discretion in admitting written material used in or made a part of a mediation procedure because it was admissible or discoverable independent of the mediation process); *see also Avary v. Bank of. Am., N.A.*, 72 S.W.3d 779, 800 (Tex. App.—Dallas 2002, pet. denied) (mediation privilege did not apply where plaintiff sought to prove a new and independent tort allegedly committed by her fiduciary during the course of the mediation). We conclude that no exception applies to the facts of this case that would warrant a disclosure of confidential mediation communications, especially considering the private and intimate nature of divorce and child custody mediation proceedings. *See Chintam*, 2023 WL 5345829, at *5 ("[p]arties cannot engage with

candor if trial courts have the discretion to break the confidential bond that protects the mediation process") (citing *Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 796 (Tex. App.—Dallas 2013, pet. denied)).

Because no exception applies that would warrant compelling the parties to disclose confidential mediation communications, neither this Court nor the trial court can determine the intent of the parties with respect to the amicus attorney provisions in the MSA. TEX. CIV. PRAC. & REM. CODE ANN. § 154.073(a). Therefore, we must hold that the partial MSA, as well as the portions of the divorce decree that rely upon it, are void because the confidential nature of the mediation process prohibits the disclosure of whether the parties would have entered into the partial MSA absent the offending provisions. *See In re Kasschau*, 11 S.W.3d at 314 (denying writ of mandamus when trial court set aside entire mediated settlement agreement at divorce on grounds of illegality rather than severing the illegal portion). Because we so hold, we do not reach Wife's remaining issues.

## CONCLUSION

We reverse the trial court's judgment. We remand the case to the trial court with instructions to set aside the divorce decree and the partial MSA upon which the decree is based and to return the case to its active docket.

/Maricela Breedlove/
_____
MARICELA BREEDLOVE
JUSTICE

230327F.P05

–17–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

IN THE INTEREST OF G.L.W., A CHILD,

No. 05-23-00327-CV

On Appeal from the 380th Judicial District Court, Collin County, Texas Trial Court Cause No. 380-57087-2018.
Opinion delivered by Justice Breedlove. Justices Smith and Miskel participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court with instructions to set aside the divorce decree and the partial mediated settlement agreement upon which the decree is based and to return the case to its active docket.

It is **ORDERED** that appellant Taylor Marie Workman recover her costs of this appeal from appellee Brandon Carlin Workman.

Judgment entered August 12, 2024